## W. F. HALLSTEAD v. M. COLEMAN ET AL.

APPEALS BY M. COLEMAN AND L. CURTIS FROM THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 17, 18, 1891—Decided October 5, 1891.
[To be reported.]

(a) In an action against several individuals, as "late copartners doing business under the firm name of the Home Savings Bank," for the amount of a deposit in a banking institution of that name, the testimony for the plaintiff, without exhibiting the precise nature of the organization, showed that the bank was managed by a board of directors, through a president, vice-president, and cashier.

(b) The plaintiff put in evidence certificates of stock, in small amounts, issued in the name of the bank to the defendants, stating on their face that it was "Organized under Act of Legislature of Pennsylvania," and that its authorized capital was $100,000, in shares of $100 each. They were similar in form to corporate stock-certificates, except that no corporate seal was affixed.

(c) No partnership agreement between the stockholders of the bank was shown; nor was it shown that the bank was ever represented to be a partnership, or that the defendants had taken any part in its management. The defendants testified that their stock was always understood by them to be stock in an incorporated bank. The books and papers of the bank were out of the state, in the custody of one of plaintiff's witnesses:

1. Upon the facts of the case as thus presented, it was error to charge

Statement of Facts.

that the burden was on the defendants to show, as a defence, that the bank was incorporated, or organized as a limited partnership; for it was incumbent on the plaintiff to prove the alleged partnership, and, until prima facie proof of such fact, the defendants were not called on to enter upon a defence.

2. It was error, also, for the court to charge that there was no evidence tending to show an incorporation of the bank. The facts above stated were, in the circumstances of this case, some evidence of such incorporation, and they should have been submitted to the jury in such a manner as to draw the attention of the jurors to the importance of the question as to the character of the bank.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

Nos. 260, 261 January Term 1891, Sup. Ct.; court below, No. 328 December Term 1887, C. P.

On October 19, 1887, W. F. Hallstead, guardian of Mary E. and Henry C. Clapp, minor children of H. Clay Clapp, deceased, brought assumpsit against Michael Coleman, Susan Fish, Levi Curtis and others, "late copartners doing business under the firm name of the Home Savings Bank of South Waverly," to recover the amount of a deposit alleged to have been made by the plaintiff in the Home Savings Bank. The defendants pleaded non-assumpsit.

At the trial on February 12, 1890, the jury were sworn as to Michael Coleman, Levi Curtis, Susan A. Fish and Sarah K. Harris, the names of all other defendants having been stricken from the record on application of the plaintiff. The following facts were then shown:

The Home Savings Bank of South Waverly commenced the transaction of a banking business in 1873, under the management of a president, vice president, cashier, and a board of directors, and continued to prosecute the same until June 25, 1887, when its doors were closed for want of funds. About that time its president, Selim Kirby, made an assignment for the benefit of his creditors to his son, Allen B. Kirby. Selim Kirby died on August 3, 1887.

Having shown that at the time it suspended business the plaintiff had on deposit in the bank the sum of $4,830.30, plaintiff's counsel put in evidence certificates of stock in favor of the defendants, Susan A. Fish, Levi Curtis and M. Coleman,

Statement of Facts.

dated respectively April 18, 1874, September 18, 1874, and June 11, 1877, for eight, ten and five shares, respectively, in form as follows:

---

No. 44.                **STATE OF PENNSYLVANIA**                5 SHARES.

# The Home Savings Bank,

AUTHORIZED                                                    ORGANIZED
CAPITAL                 SOUTH WAVERLY.                        UNDER
$100,000.                                                ACT OF LEGISLATURE
                  —Shares $100 Each.—                    OF PENNSYLVANIA.

This is to Certify  *That M. Coleman is entitled to Five Shares in the Capital Stock of the* **Home Savings Bank of South Waverly** *transferable only on the Books of the Bank in person or by Attorney, on the surrender of this Certificate.*

                                        **South Waverly,** *June 11,* 1877.
*C. E. PENDLETON, Cash'r.*              *SELIM KIRBY, Pres't.*

---

Each of these certificates was signed by Selim Kirby as president, and by C. E. Pendleton, as cashier, but with no seal affixed.

It appeared upon cross-examination of one of plaintiff's witnesses, that the books and papers of the bank relating to its organization, were taken possession of, after its suspension, by Allen B. Kirby, who was present at the trial as a witness for the plaintiff, and that at the time of the trial they were in the state of New York. The plaintiff did not offer to show that the bank was organized as a partnership or joint-stock company, and the only evidence of its character, found in the plaintiff's case, consisted of said certificates of stock and the fact that it was under the management of the officers named above.

The plaintiff showed, further, that the defendants Coleman and Curtis had received several dividends upon their stock out of the earnings of the bank. It was admitted by the plaintiff that Allen B. Kirby was the husband of one of the plaintiff's wards. W. D. Kirby, the brother of Allen B. Kirby, was called as a witness for the plaintiff, and testified that he was employed as a book-keeper in the bank for about six years prior to the time when it ceased to do business.

At the close of the testimony for the plaintiff, the court, on

Charge of Court below.

motion entered a compulsory nonsuit as to Sarah K. Harris, but refused the motion, as to the other defendants.

The defendants then presented testimony tending to show that Selim Kirby was the projector and promoter of the organization of the Home Savings Bank; that, while soliciting subscriptions to its stock, he exhibited to persons whom he asked to subscribe a paper purporting to be a charter of incorporation, and that the defendant Curtis subscribed for his stock after having been assured by Kirby that the bank was regularly incorporated ; that annual elections of officers were held, at which stockholders cast one vote for each share of stock held by them ; and that annual reports of the condition of the bank were made to the auditor general of the commonwealth. Michael Coleman testified that five shares of stock held by the witness were issued to him as and for stock which had been held by his son, who died intestate, leaving a widow but no children ; that they came to the witness as his son's heir, and that at the time of receiving the certificate he gave the bank a bond of indemnity. There was no evidence of any transfer of the original certificate to Mr. Coleman, upon the books of the bank, by an administrator of the son. It was not shown how many shares of stock the son had held in his lifetime. Among the persons whose names originally appeared upon the record as defendants, but were stricken off before trial, was John Coleman, who was said in the paper-books to be the son referred to in the testimony of Michael Coleman. The testimony of Levi Curtis and Michael Coleman tended to show that they never participated in the management of the bank or in any of its business, except by merely holding stock and receiving some dividends thereon. Susan A. Fish was not called as a witness. There was testimony tending to show that H. Clay Clapp, the father of the plaintiff's wards, was one of the directors of the bank.

The testimony being closed, the court, SITTSER, P. J., charged the jury in part as follows:

The first question for you to dispose of, will be whether the Home Savings Bank of South Waverly, whatever it was, was indebted to the plaintiff in the sum claimed by him in this suit. The plaintiff claims that he had deposited in that institution, and that there was due him on the twenty-fifth day of June,

1887, the sum of $4,830.30. It will be your duty to first ascertain what, if any, amount was due to the plaintiff from the Home Savings Bank at the time this suit was brought.

[If you find that there was any sum due to the plaintiff at that time, your next inquiry will be whether this institution was a partnership, or what it was. And if you find that it was a partnership, your next inquiry will be whether these defendants were members of the firm. A partnership may be formed where the parties do not intend a partnership. A man may become a member of a firm, and assume all the liabilities of a partner, when he does not intend to become a partner, when he does not regard himself as a partner, and has never been treated as a partner by the other persons connected with the business. If a man puts his money or his property into a business, and by contract with the other parties stipulates for a share of the profits, he becomes a partner in that business whether he intended to do so or not. And this results from the fact that he has joined with other persons in a business or adventure, and has stipulated for a share of the profits of the business. That fact would make him a partner. That is the general rule. These defendants claim that when they invested their money in this business they supposed it was an incorporated bank. But the material question for you to determine is, did they invest their money in this business, and did they stipulate for a share of the profits of the business? If they did, they became partners, and individually liable for all the debts of the firm, unless they can show something by which they can protect themselves from this liability. If the institution was an incorporated bank, then they would not be individually liable. But if it was incorporated, the burden is upon the defendants to show it. And if it was a limited partnership the burden is upon the defendants to show it. No evidence has been given before you that it was incorporated, and no evidence that it was a limited partnership.] [4] A question has been raised here as to the liability of Michael Coleman. The certificate of stock which has been given in evidence is dated the eleventh of June 1877, and it is claimed on the part of the plaintiff that because he took that certificate of stock for five shares, he acquired an interest in this business and became liable as a partner. If this institution was a partnership; if you find that it was a

Charge of Court below.

partnership, when you come to the case of Michael Coleman you will consider, first, what authority Mr. Kirby and the cashier had to transfer to him five shares in that business.

This certificate is signed by Selim Kirby, and by C. E. Pendleton. Ordinarily, where a partnership exists each member of the partnership participates in the business, and has an equal voice with the others. They may, however, if they see proper, deputize certain persons to be managing partners. They may by express agreement authorize certain persons to admit other persons into the partnership, upon their contributing to the capital of the concern; or they may, without any express resolution to that effect, by a long course of business and an acquiescence in the exercise of such authority upon the part of certain persons, make a certificate of stock evidence that the person named therein has been made a partner in the concern and a sharer in the business. But there should be proof of this. That Selim Kirby and C. E. Pendleton, the one styling himself president and the other cashier of this bank, could issue a certificate of stock to a person who had invested his money in the business, seems to have been the course pursued by this bank from the beginning. And it seems to have been acquiesced in by all the persons interested in that business.

There is no evidence, however, that Mr. Kirby or Mr. Pendleton could issue certificates of stock and give persons an interest in that business unless they contributed money to the capital of the institution. There is testimony in this case to show that Mr. Coleman paid nothing for this certificate of stock; that he put no money in this business. The evidence on the part of the defendant is that a son of Michael Coleman had an interest in this business, and held ten shares in this institution; and that upon his death Selim Kirby and C. E. Pendleton attempted by this certificate to transfer to Michael Coleman five shares of the stock that had belonged to Mr. Coleman's son in his lifetime. When a man dies, his personal estate goes to his executors or to his administrators. Selim Kirby had no authority to assign and transfer to Michael Coleman the property which belonged to Michael Coleman's son. The executor or administrator could have transferred it. And if the executor or administrator had produced proper authority to Mr. Kirby, he might have had the power to transfer it upon the books,

and to issue this certificate. But in the absence of some au-thority, either from an administrator or from an executor, or of a family arrangement made between the parties in interest and assented to by them, he had no authority to transfer this stock, and could not by that act make Michael Coleman a member of the firm. In the absence of such authority, Michael Coleman could not claim to be a member of the firm, and would have no right to call upon the other partners for an account, and would have no right to participate in the business. [Whether he was authorized in that way, whether there was a family arrangement by which Mr. Kirby would be authorized to trans-fer this stock, is a question of fact for you under all the evi-dence in the case.] [9]

If you find for the plaintiff you will say in your verdict that you find for the plaintiff a certain amount, which you will state in your verdict. And if you are of the opinion that Michael Coleman was not a member of this firm, and that Susan Fish and Levi Curtis were, you can say that you find for the plaintiff as to Susan Fish and Levi Curtis, stating the amount in your verdict.

The plaintiff's counsel have submitted a point in writing, asking us to charge you as follows:

1. That, under all the evidence in the case, the plaintiff is entitled to recover, and your verdict should be in his favor for the amount of his claim as shown by the evidence.

Answer: This point is not affirmed. But in refusing to affirm it [we do not say to you that the plaintiff is not entitled to recover. We simply submit the evidence to you, and it is for you to determine, under the instructions we have already given to you, whether or not the plaintiff is entitled to re-cover.] [5]

Mr. Mercur: I think the court is in error in saying that there is no evidence of any agreement or arrangement. The evidence of Michael Coleman was that he went to the bank to-gether with his daughter-in-law, and made the arrangement by which the certificate was surrendered and these two issued to him and his daughter-in-law.

By the court: [We do not say to the jury that there was no arrangement, but we submit the evidence to the jury, and it is for them to find whether there was any such arrangement or not.] [9]

—The jury returned a verdict for the plaintiff for $5,593.48. A rule for a new trial having been discharged and judgment entered, the defendants Coleman and Curtis took these appeals, assigning for error, inter alia, in each case:

4, 5. The parts of the charge embraced in [ ] ⁴ ⁵

Michael Coleman assigned for error, also:

9. The parts of the charge embraced in [ ] ⁹

*Mr. M. F. Elliott* (with him *Mr. D'A. Overton*), for Levi Curtis, appellant.

1. While professing to leave the question of partnership to the jury, the court really withdrew it. There was no direct evidence to justify the submission of the question whether Levi Curtis "stipulated for a share of the profits;" and if the fact that he was induced to subscribe for stock, after the bank had commenced business, on the representation of Selim Kirby that the bank was duly chartered, and afterwards received some small dividends, constituted him a partner, the court should have said so; but no instruction on the question whether or not these facts would make him a partner was given. This manner of charging the jury was error: Keating v. Orne, 77 Pa. 89; Cook v. Mackrell, 70 Pa. 12; Potts v. Wright, 82 Pa. 498. The whole charge of the court was misleading and erroneous in this respect: Garrett v. Gonter, 42 Pa. 143; Bisbing v. Third N. Bank, 93 Pa. 79; Lackawanna R. Co. v. Chenewith, 52 Pa. 382; Gregg Tp. v. Jamison, 55 Pa. 468.

2. In order to constitute a partnership, as between the parties, there must be a contract to that effect: Story on Part., § 2. Persons will become liable as partners to third parties only by contracting that relation inter se, or by holding themselves out to the world as such: Collyer on Part., § 6; Hedge's App., 63 Pa. 273; Thompson v. First N. Bank, 111 U. S. 529; Denithorne v. Hook, 112 Pa. 240. It is not pretended that the plaintiff or any one else dealt with this bank supposing it to be incorporated. Having dealt with a de-facto corporation, the plaintiff cannot be permitted to treat as partners persons who in good faith supposed themselves to be stockholders in a valid corporation: Blanchard v. Kaull, 44 Cal. 440; Cochran v. Arnold, 58 Pa. 399; Fay v. Noble, 7 Cush. 188; Spahr v. Farmers Bank, 94 Pa. 429. This doctrine was applied by the

Supreme Court of New York in a suit against the stockholders of this same bank: Merchants N. Bank v. Pendleton, unreported.

*Mr. E. Overton* and *Mr. H. F. Maynard*, for Michael Coleman, appellant:

1. Sharing in profits will not constitute the sharers partners in the business: Hart v. Kelley, 83 Pa. 286. A stipulation or understanding that a partnership shall not exist, will be valid as between the parties to it: Gill v. Kuhn, 6 S. & R. 338; Jordan v. Wilkins, 3 Wash. C. C. 110; and even as to third persons who knew of its existence: Bailey v. Clark, 6 Pick. 372; Hastings v. Hopkins, 28 Vt. 108; Chapman v. Devereux, 32 Vt. 616. If the persons who organized this institution conducted its business without a charter, though as a chartered bank, they may be individually liable; but persons who had nothing to do with its creation, the appointment of officers or the management of its business, and who simply purchased stock in what was represented to them by the certificates they received to be an incorporated bank, cannot be so liable. These certificates were put in evidence by the plaintiff, and the onus was on him to disprove their statement that the bank was incorporated.

2. There was no evidence of a family arrangement by which the stock which had been held by Coleman's son was transferred to Coleman, and the court erred in submitting the question whether there had been such an arrangement. But even if there was, that did not make the latter a member of the firm. He could not become an actual partner without the consent of the other partners; and Kirby could not give stock away, and thus admit as a partner one who contributed no capital to the concern. No one could become a partner, even so as to entitle him to an accounting, without he invested money, or had the interest of some one else transferred to him in compliance with the rules set forth in the stock certificates. By the death of Coleman's son, the firm, if it was a firm, was dissolved, and the son's representatives became entitled simply to an account: Christy v. Sill, 131 Pa. 492.

*Mr. E. N. Willard* and *Mr. Rodney A. Mercur* (with them *Mr. Everett Warren*), for the appellee:

Arguments.

1. The existence of a partnership, as deducible from facts and circumstances, is for the jury: Brady v. Colhoun, 1 P. & W. 140; and the court properly submitted the question to the jury. It is claimed by defendants that there was no evidence of their having stipulated for a share of the profits; but the very best evidence of their having so stipulated is the fact that they actually received profits. "A participant in profits directly as such, no matter what may be the arrangement between the parties, is as to third persons a partner:" Gill v. Kuhn, 6 S. & R. 338; Churchman v. Smith, 6 Wh. 148; Edwards v. Tracy, 62 Pa. 380; Reed v. Kremer, 111 Pa. 486; Caldwell v. Miller, 127 Pa. 442; Winship v. U. S. Bank, 5 Pet. 560. Cox v. Hickman, 8 H. L. Cas. 268, has not been followed in Pennsylvania.

2. The Home Savings Bank was either a joint stock company: Collyer on Part., 1198; Cook on Stockholders, § 508; or a partnership: Oliver's Est., 136 Pa. 58. Whichever it was, the liability of the defendants is practically the same: Cook on Stockholders, § 508; Kellogg Bridge Co. v. United States, 15 Ct. of Claims R. 111; Westcott v. Fargo, 61 N. Y. 542 (19 Am. Rep. 300); Witherhead v. Allen, 3 Keyes 362. All unincorporated banks are partnerships: Hess v. Werts, 4 S. & R. 359; Witmer v. Schlatter, 2 R. 359; Ridgely v. Dobson, 3 W. & S. 118; Beaver v. McGrath, 50 Pa. 479; Fry's Account, 4 Phila. 133; Protchett v. Schaefer, 11 Phila. 166; Thomson's Est., 5 W. N. 14. So are unincorporated joint-stock companies: Kramer v. Arthurs, 7 Pa. 165; Hedge's App., 63 Pa. 273; Clarke's App., 107 Pa. 436; Oliver's Est., 136 Pa. 43.

3. The stockholders in this institution are therefore liable for all the debts, to the same extent as the members of an ordinary partnership: 1 Lindley on Part., § 376; 2 Idem, § 1083; Pettis v. Atkins, 60 Ill. 454; Hodgson v. Baldwin, 65 Ill. 532; Jessup v. Carnegie, 12 Jones & Sp. 261; Shamburg v. Ruggles, 83 Pa. 148; Shamburg v. Abbott, 112 Pa. 12; Clark v. Fletcher, 96 Pa. 416; Christy v. Sill, 131 Pa. 492. In Pennsylvania, no partnership is limited, unless it is formed in strict compliance with the statutes on the subject of limited partnerships: Andrews v. Schott, 10 Pa. 47; Richardson v. Hogg, 38 Pa. 155; Vandike v. Rosskam, 67 Pa. 330; Maloney v. Bruce,

94 Pa. 249; Eliot v. Himrod, 108 Pa. 579; Hite Nat. Gas Co.'s App., 118 Pa. 436; Hill v. Stetler, 127 Pa. 145; Vanhorn v. Corcoran, 127 Pa. 255; Sheble v. Strong, 128 Pa. 315.

4. An ineffectual attempt at incorporation may make the parties members of a joint-stock company and partners: Cook on Stockholders, § 506; In re Mendenhall, 9 Bank. Reg. 497; Whipple v. Parker, 29 Mich. 369; Nat. Bank of Watertown v. London, 45 N. Y. 412. The rule laid down in Morawetz on Corp., § 740, that persons who have dealt with a body professing to be a corporation, as such, cannot question its corporate existence for the purpose of charging its members as partners, applies only to de-facto corporations. It is not universally accepted: Hurt v. Salisbury, 55 Mo. 310; Cook on Stockholders, § 233; and is not followed in Pennsylvania: Sheble v. Strong, 128 Pa. 315. There is no evidence, however, that the plaintiff did deal with the bank as a corporation. The argument that the plaintiff, by putting in evidence the stock certificates, proved the incorporation of the bank, comes with a bad grace. The pamphlet laws and the records of the courts and executive departments were open to the defendants, and if they relied on an incorporation they could easily have shown it.

5. That the defendants may have been induced to become stockholders by fraudulent representations imputable to the company, might give them a special action on the case against the persons who perpetrated the fraud, but would afford no defence as against creditors: McHose v. Wheeler, 45 Pa. 32; 2 Lindley on Part., § 528; Morawetz on Corp., § 595; Kerr on Fraud, §§ 329, 330; Henderson v. Royal B. Bank, 7 Ell. & Bl. 356; Powis v. Harding, 1 C. B., N. S., 531; Oakes v. Turquand, L. R. 2 H. L. 325; Stone v. City Bank, L. R. 3 C. P. 282; Tennent v. Glasgow Bank, L. R. 4 App. Cas. 615; Houldsworth v. Glasgow Bank, L. R. 5 App. Cas, 317; Ogilvie v. Insurance Co., 22 How. 380; Upton v. Tribilcock, 91 U. S. 45; Turner v. Insurance Co., 65 Ga. 649 (38 Am. Rep. 801). The New York decision as to the liability of the stockholders of this bank, relied on by the appellants, is based upon the New York rule as to the effect of participating in profits, which is the reverse of the rule in Pennsylvania.

OPINION, MR. JUSTICE WILLIAMS:

The learned judge, before whom this case was tried, correctly stated the principles that controlled the liability of partners to third persons dealing with them. There is no doubt that, where the relation is shown to exist, each partner is liable individually for all the debts of the firm. It is also true, as a general rule, that participation in profits makes one a partner as to persons dealing with the firm, although this rule is not without some well-recognized exceptions: Edwards v. Tracy, 62 Pa. 374; Hart v. Kelley, 83 Pa. 286. The business of banking is one in which a partnership may lawfully engage, and it is immaterial that the names of the partners do not appear in the firm name: Shamburg v. Ruggles, 83 Pa. 148. The liability of the partners depends, not on the name of the partnership, but on the existence of the partnership relation. These rules were correctly stated on the trial. The ground of complaint is the manner of their application to the facts of this case.

In his charge to the jury the learned judge drew attention to the evidence showing the organization of the bank, the holding of stock by the defendants, and their receipt of dividends; and then submitted the questions to the jury in the following order: First, was the bank indebted to the plaintiff as alleged; second, was the bank a partnership; and third, were the defendants members of the firms? Having simply stated the second question, he proceeded to consider and discuss the third, and among other things said to the jury: "Did they (the defendants) invest their money in this business, and did they stipulate for a share of the profits of the business?" To enable them to understand the significance of their finding upon this question, he immediately added, "If they did, they became partners, and individually liable for all the debts of the firm, unless they can show something by which they protect themselves from this liability. If the institution was an incorporated bank, then they would not be individually liable. But if it was incorporated, the burden is upon the defendants to show it. And if it was a limited partnership, the burden is on the defendants to show it."

This instruction was calculated to divert attention from the second question, which was the important one, and fix it on the

Opinion of the Court.

third.   It assumed that there was competent and adequate
proof before the jury to establish, prima facie, that the bank
was a private enterprise owned and conducted by a partnership,
and it put the burden of proof on the defendants.   It left
the jury to infer that, until the defendants should assume the
burden put upon them, and show affirmatively that the bank
was incorporated, or was organized as a limited partnership,
they should be held liable as partners.   But the learned judge
went still further.   Having put the burden on the defendants
of showing the character of the bank, and having explained to
the jury what the defendants must show in order to "protect
themselves from this liability," he proceeded to say:  "No evi-
dence has been given before you that it (the bank) was incor-
porated, and no evidence that it was a limited partnership."
This left the jury no alternative.   They must find that the de-
fendants invested their money in the bank, with a view to share
in the profits of the business, for this was not denied; and this
they were told made them partners.   They could protect them-
selves only by showing the incorporation of the bank, or its
organization as a limited partnership, and this, they were told,
had not been done.   The conclusion naturally followed that
they were liable as partners.

Now, the important question, in this case, which lay at the
threshhold of the plaintiff's cause of action, was whether this
bank was a partnership.   The plaintiff alleged it, and claimed
to recover against the defendants as members of the banking
firm.   The burden of proving the partnership was on him,
and until this proof was given the defendants were not called
upon to enter upon their defence.   They were not bound
to prove the character of the organization of the bank, in order
to "protect themselves," until they were first put in danger
of a verdict against them, by proof that the bank was a part-
nership, and that they were members of the firm.   As they did
not deny that they were stockholders, the only open question
was that of the character of the bank, and this is the question
to which the attention of the jury should have been drawn.

What was the evidence upon this question?   The plaintiff
showed the fact that the bank was organized; that it conducted
a banking business under the management of a board of direct-
ors, with a president, vice-president and cashier, until 1887 when

it failed. This was all. No articles of copartnership, or contract between the founders of the bank, was shown. How the organization was effected, or the business of the bank done, did not appear. There was not even a single act or declaration of any officer, director, stockholder, or clerk, tending to show that the bank had ever been represented, at any time or to any person, as a partnership. There was no proof that the defendants or either of them had ever attempted to exercise any control over the business of the bank, or had participated in it in any other way than by the receipt of a few small dividends. On the other hand, it appeared in the evidence that Kirby, the founder of the bank, represented that he had obtained a legal charter for it, while he was engaged in soliciting subscriptions to the stock. The certificates held by the defendants, which were put in evidence by the plaintiff, described the bank as " Organized under Act of Legislature of Pennsylvania," and as having an authorized capital of one hundred thousand dollars, divided into shares of one hundred dollars each. This description is certainly appropriate to an incorporated bank, and no inference can be drawn from it favorable to the position of the plaintiff that it was not such. Moreover, the defendants were severally upon the witness stand, and testified in the most positive manner that they were not partners with Kirby and others, but stockholders, as they understood and believed the fact to be, in an incorporated bank, and that the stock was sold to them, and bought by them, as and for the lawfully issued stock of a bank doing business under a valid charter. From this evidence the jury would have been justified in finding against the plaintiff; and if their attention had been drawn to it, as its importance required, the result of their deliberations might have been just the opposite of what it was.

The position of the parties is not without some bearing on this question. The real plaintiff was the wife of one of the sons of the man who organized the bank, presided over its affairs for fourteen years, and conducted it into hopeless bankruptcy. Her husband had been in the employ of the bank for years as a clerk and book-keeper. He had the means of knowing, and, it is fair to presume, did know the character of the bank and the manner in which it was organized. His brother, who was the assignee both of his father and of the bank, and

had actual custody of all the books and papers of both, at his place of business in another state, was present at the trial as a witness for the plaintiff. Whether the bank rested on a contract between its founders, or on a charter from the state, he was in a position to know, and to bring the document before the court. With these two witnesses the plaintiff was in a position to show all that the books and papers of the bank, or of its founder, contained relating to the organization. The defendants, on the other hand, were simply small stockholders, shown to have had no connection with or knowledge of the business of the bank and no access to its books and papers. How, in a contest between parties so situated, can it be said that the burden of showing the nature and character of the organization of the bank is on the defendants? The books and papers from which this evidence is to be drawn are in another state, beyond the reach of process, and in the hands of the plaintiff's witness and brother. The defendants have no means of reaching them or compelling their production. Under such circumstances, if the absence of exact proof of the nature of the organization affords a basis for a presumption against either party, it must be against him who is in a position to produce such proof. It was error, therefore, to say, on the facts of this case as they were presented in the court below, that the burden of proving a charter, or an organization as a limited partnership, was on the defendants. The burden of proving a partnership as alleged was on the plaintiff; and, until this was shown, the defendants were not called upon to enter upon a defence. It was error also to say that there was no evidence tending to show an incorporation of the bank. There was some evidence, and it should have been submitted to the jury in such manner as to draw their attention to the importance of the question.

Something has been said in the argument about the unconscionable position of bankers, who first invite the public confidence, and when they have secured it betray it, and then seek to escape from the legal consequences of their own frauds. We quite agree with all that has been said by way of censure of such conduct, but it is not quite appropriate upon the facts of this case. The defendants took their stock in an organized bank, doing business as a savings bank. They had nothing to

do with its current business.   They neither invited the plaintiff to make deposits, nor embezzled the money when deposited. It is not alleged that they aided in bringing about, or profited by the ruin of the bank.   They are rather among the sufferers from the ruin, wrought apparently by the president.   While he squandered the money of depositors, he sunk also the money of the stockholders.   If the defendants are now liable to the creditors of the bank, it is not for their own fault or fraud, but because of their misfortune in being associated in business with one who has wasted the money of his partners, and that of the customers of the firm at the same time, and left both remediless.   This is their position, if the bank was a partnership. They must in that case bear their own loss, and make good, to the extent of their ability, the losses of the depositors.   But he who asserts their liability as partners must show it, and the sufficiency of the showing must be determined by the jury under proper instructions.

The judgment is reversed and a venire facias de novo awarded.