## Gibbs's Estate.   Hallstead's Appeal.

### [Marked to be reported.]

|157|59|
|157|75|
|157|59|
|166|495|
|157|59|
|182|11|
|157|59|
|201|475|

*Definition of corporation.*

A corporation is an artificial person created by law as the representative of those persons, natural or artificial, who contribute to, or become holders of shares in, the property intrusted to it for a common purpose.

*Definition of de facto corporation.*

A corporation de facto is an apparent corporate organization, asserted to be a corporation by its members and actually acting as such, but lacking the creative fiat of the law.

A de facto corporation exists when these three things concur, viz., (1) a law under which the alleged corporation might be created ; (2) an attempt to organize under the law ; and (3) assumption and exercise of corporate powers under such attempted organization.

*Definition of partnership.*

A partnership is a relation created by a contract between two or more persons to place their money, effects, labor, or skill, or some or all of them, in lawful commerce, and divide the profits between them.

*Evidence of existence of partnership.*

The best evidence of the existence of a partnership is the contract creating it.   If proof of the contract is not within reach, its existence may be inferred (1) from proof of contribution to the partnership stock ; (2) from participation in profits ; and from (3) the acts and declarations of the parties sought to be charged.

*Partnership—Participation in profits—Evidence.*

Participation in profits is not conclusive proof of the existence of the partnership relation, but it is cogent evidence upon the question.   If the defendant is able to show that such participation was referable to some other reason, such as compensation for services rendered by him as agent, broker, salesman or otherwise, the prima facies is overcome.   So if the participation in the profits is referable to some other relation than that of partnership between the participants, such as membership in a joint stock association, or a corporation, the effect of proof of participation will be overcome.

*Banks and banking—Corporations—Partnership—Evidence.*

In a proceeding to charge the owner of bank shares as a general partner, the evidence showed the organization of a bank under the name of the Home Savings Bank, with a president, cashier and board of directors. The certificates of stock recited the organization of a bank under the laws of the state and the division of its captial into shares of one hundred dollars each.   Dividends were declared by the directors, and paid by dividend checks drawn under the authority of the board of directors.   There was evidence that the owner of the stock received such dividend.   The manner of the organization of the bank was not shown, nor was there any

proof that the officers or stockholders claimed, or held out to the public that the stockholders were partners, or the bank a partnership enterprise. Reports to the auditor general of net earnings referred to the organization as a firm, in those parts of the reports which were printed. *Held,* that the evidence was not sufficient to warrant the Supreme Court in reversing the finding by an auditor, affirmed by the court below, that the bank was not a partnership, and that the stockholders were not liable as partners for its debts.

Argued March 15, 1893. Appeal, No. 66, Jan. T., 1893, by W. F. Hallstead, guardian of Mary E. Clapp et al., from decree of O. C. Bradford Co., Sept. T., 1887, No. 20, dismissing exceptions to auditor's report in estate of Henry Gibbs, deceased. Before GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to report of auditor on exceptions to administrator's account. Before METZGER, P. J., 29th judicial district, specially presiding.

The case was referred to Stanley W. Little, Esq., as auditor.

Before the auditor, W. F. Hallstead, guardian of Mary E. Clapp et al., claimed to recover from the estate of decedent, Henry Gibbs, the sum of $2,900.46, the amount of a deposit in the Home Savings Bank, of which decedent was a stockholder. The claim was made on the ground that the bank was a general partnership, and that its stockholders were liable as partners for its debts.

The auditor reported in part as follows :

" The exceptants to the account of the administrator ask to take out of the funds for distribution the sum of $36,167.53 and interest. This request is based on the position that the ' Home Savings Bank ' was not a corporation, or a limited partnership, or a joint stock association, and therefore was a common partnership. That, being a common partnership, and Henry Gibbs having been a stockholder therein, his individual estate is liable for the entire amount of money deposited in said bank during the time said Gibbs was a member thereof, and unpaid, with what interest may be due thereon.

" This statement of the case at once discloses its importance to the parties concerned. The industry of counsel and the research of the auditor have failed to find much authority in this state to aid in the solution of the question which distinguishes

this case. All fair minds must agree that a party seeking to divert so large a fund from its ordinary channel into the pockets of strangers, should present a case strong in the fact and clear in the law.

"As a starting point in this investigation the auditor can find nothing better than the opinion of Mr. Justice WILLIAMS, in the case of Hallstead v. Coleman, 143 Pa., at page 364, in these words: 'Now the important question in this case, which lay at the threshold of plaintiff's cause of action, was whether this bank was a partnership. The plaintiff alleged it and claimed to recover against the defendants as members of the banking firm. The burden of proving the partnership was on him, and until this proof was given the defendants were not called upon to enter upon their defence.' Applying this law to this case, which involves questions very similar to those in the case just mentioned, the first question is, have the exceptants proved this was a partnership, of which Henry Gibbs was a member at the time they deposited their money in this bank, and for all the debts and defalcations of which his estate is liable?

"The evidence offered by them shows that in September, 1873, a bank was opened at South Waverly in this state; that it had over its door the name 'The Home Savings Bank;' that it organized by electing a board of directors and a president and cashier; that its capital stock was divided into shares of one hundred dollars; that to each holder of stock it issued certificates of stock, saying upon their face that the bank was organized under act of the legislature of Pennsylvania; that its authorized capital was one hundred thousand dollars; that these certificates had on their back blank powers of attorney for transfer, and in all respects were in the form and style usually adopted by banks; [that these certificates when issued were signed by the president and cashier, and to some of them the seal was affixed;] [17] [that it had a seal which was affixed to all cashier's checks;] [18] that said bank registered in the office of the auditor general under section 1 of act of June 7, 1879; that it filed these separate reports in said office of its net earnings or income under the 10th section of said act; [that it also filed in said office at least six reports for publication, covering the four quarters of the year in accordance with the requirements of the act of April 16, 1850, and April 17, 1861;] [19] that it paid dividends to its

stockholders; that it failed and passed into the hands of a re-
ceiver; that none of the certificates of stock, certificates of de-
posit, books of account with customers, bills, letters, checks or
drafts bore upon their face the names of any member other than
the president and cashier, and the person to whom addressed or
issued; that the transfer of any stockholder's interest was at
his own option, and neither such transfer, nor the death of any
stockholder worked any change in the name or conduct of the
business; that so slight was the effect upon the business of the ,
death of Mr. Gibbs, that a large amount of claims have been
presented before the auditor for allowance, for money deposited
after his death; or deposited before and re-deposited and new
certificates therefor issued after his death.   [What is there in
all this evidence from beginning of the business to the failure
tending to prove a partnership?   What in it all inconsistent
with a corporate existence?   Only one thing has been urged
upon the auditor, and that is to be found in the form of the re-
ports made by the bank to the auditor general of its net earn-
ings or income under § 10 of act 1879;] [20] and the position
was taken that the provisions of this section only apply to un-
incorporated banks.   While it is true that in the printed portion
of these reports the word 'firm' is used instead of 'corpora-
tion;' yet, remembering that these printed forms were not
made by the bank, but were sent to it from the auditor general's
office; and that they were made and returned under an act
which is not applicable solely to unincorporated banks, but ap-
plies to those which are incorporated as well, [and as at most
was only the declaration of one member in the absence of and
without the knowledge of any others; the auditor does not
deem this single fact sufficient to overcome the preceding evi-
dence of incorporation, or, more accurately, to prove the part-
nership.] [21]

"This comprises the affirmative evidence of the exceptants.
It is supplemented by some of a negative character, showing
that searches in the office of the recorder of deeds in this county
have failed to find any record of this bank as a limited partner-
ship; and that searches in the auditor general's office have
proved equally futile in finding any record of its incorporation.
From these two negatives the auditor is urged to find an affirm-
ative.   In other words, as no record can be found showing this

bank to have been a limited partnership or a corporation, it must have been a simple partnership.

"Upon the certificates issued to Mr. Gibbs each time he acquired stock in this bank, it declared it was organized under 'act of the legislature of Pennsylvania.' If this was true, a search among those local acts of the legislature which filled our pamphlet laws prior to 1874, might have been better rewarded.

"[But is it true that if this was not a corporation or a limited partnership, it follows necessarily that it was a common partnership? This has been urged with much force, and the auditor admits that he entertained that belief at the outset of this case; but from authority consulted and reflection, he has come to a different conclusion. A partnership inter se cannot result from any aggregation of negatives. The formation of such a partnership is a positive action and cannot exist without an agreement of some kind among all its members.] [22] Parsons in his work on Partnership, in discussing who are liable as partners, says: 'The first thing to be remembered is that persons may be charged as partners of a firm, on either one of two perfectly distinct grounds; one of them is that the person actually is a partner, the other is that he has with his own knowledge and consent held forth as a partner to the person having a claim, or to the public generally.' [Upon which of these two distinct grounds can Mr. Gibbs be charged as a partner in this case? Certainly not upon the first; for no articles of partnership and no agreement to be partners, and no agreement of any kind existed between Mr. Gibbs and the other stockholders; and no person can be a partner in fact in a partnership having no existence. If then this estate is to be charged, it must be upon the second ground above mentioned. But the evidence fails to show any holding forth of him as a partner by the bank or by himself. His name nowhere appears in any business transaction of the bank with others; he took no part in its management or control; he never held any official position therein; no one of these claimants knew that he was a stockholder therein at the time of depositing their money; the bank never represented to any one of them that it was a partnership, and none of them dealt with it as such, and the evidence does not show that Mr. Gibbs had any knowledge of the transactions between

the bank and these claimants, or had a personal acquaintance with them.   But on the contrary the weight of the evidence tends to show that this bank held itself out to the world and to Mr. Gibbs as a corporation and nothing else.] [23]

" But, it is said, Mr. Gibbs took dividends on his stock, and hence his estate is liable in this case.   [As tending to discharge the burden resting upon the claimants, to prove that this bank was a partnership instead of a corporation, the fact of the receipt of dividends does not go far;] [24] because the taking of dividends is as consistent with the corporate, as with the partnership relation.

" [Nor does this fact, standing alone and disconnected with any agreement between the stockholders, or any holding forth . of Mr. Gibbs as a partner by the bank or by himself, or with any credit given to the bank by the claimants knowing Mr. Gibbs to be in any way connected therewith, make his estate liable] [25] in the opinion of the auditor.   The old doctrine announciated in Waugh v. Carver, 2 H. Bl. 235, that one taking a share of profits shall, by operation of law, be made liable to losses, upon the principle that, by taking a part of the profits, he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts, is not the accepted law to-day in England, and, as the auditor thinks, is not in accordance with the weight of authority in this country : Edwards v. Tracy, 62 Pa. 380. [Profits can only exist after payment of all liabilities ; and how any one who shares only in what may remain after all creditors are secured, takes from them any security, is not quite plain.] [26]   This is especially true of the banking business.   [Every man buying stock in a bank that is conducted upon usual and sound banking principles, as he has a right to expect it will be, knows that he will get no dividends, only such as may remain after all liabilities are deducted.] [27]   When a person induces others to credit a firm upon the assurance or belief that he is a member thereof, his property should make good any loss thereby sustained by such creditor, whether such person receives any dividend or not ; [but to hold one who puts money into a business and draws out no part of the principal, and but a small part of the interest, liable for all debts, should rest on better reason than that he has reduced the creditors' security.   Mr. Gibbs's purchase of this stock and the

receipt of dividends thereon, did nothing to lessen the amount these exceptants may, or have realized on their claims. He put in six thousand dollars, and drew out eighteen hundred and twenty dollars, thereby making the fund for creditors forty-one hundred and eighty dollars larger.] [28] That this fund was diverted or misappropriated, does not make him liable; it not having been done by him or by any agent of his, in fact or in law. It has been said in support of these claims that there must be a liability somewhere, that persons doing business in this state must do it subject to the liability either of incorporators, partners or individuals. Suppose this is admitted. Is there a want of all liability here? If this bank were solvent to-day, and these claimants brought suit against it as a corporation, what would prevent their recovery? [Having declared to the world for nearly eighteen years that it was a corporation, and having induced these parties to trust it as such, what court would now permit it to defend on the ground that it was not incorporated, and thereby allow it to benefit by its own fraud? Clearly it would be estopped:] [29] Spahr v. Farmers Bank, Carlisle, 94 Pa. 429, and authorities there cited. The inability of claimants to get their pay seems to result more from a want of ability than liability on the part of the bank; a want from which this estate has suffered in common with these parties.

"[ The auditor is therefore of the opinion that the demand of the claimant is not sustained;] [30] and dismisses the exceptions, feeling satisfaction in the knowledge that his decision, if erroneous, can be corrected in a higher court. In coming to this conclusion the auditor has been influenced to some extent (he hopes not too far) by the opinion of Judge MARTIN of the Supreme Court of New York, and the many authorities cited by him in the case of the Merchants National Bank of Binghamton, New York, v. Charles E. Pendleton et al., which is attached to this report; which opinion has been recently affirmed by the court of appeals of the same state."

Exceptions among others to above findings in brackets were dismissed. Whereupon exceptant appealed.

*Errors assigned* were (18–30) dismissal of exceptions, quoting them.

*Rodney A. Mercur* and *Everett Warren, Ulysses Mercur, E.*

*N. Willard* and *Henry A. Knapp* with them, for appellant.—
Rightfully dividends can only be paid out of profits: 5 Am. &
Eng. Ency. of Law, 725 ; 2 Lindley on Partnership, sec. 791.
The auditor was clearly mystified by the terms " profits" and
" dividends," or else he attempted to steer clear, which is more
likely, of the rule laid down by the case of Edwards v. Tracy,
62 Pa. 374 ; Caldwell v. Miller, 127 Pa. 446.

The declarations and acts of an officer or even a member of a
partnership firm are binding upon the other members, if done
within the scope of the business of the partnership : Loudon
Sav. Fund Society v. Hagerstown Sav. Bank, 36 Pa. 498 ; 1
Lindley on Partnership, § 264.   The admissions of one partner
with reference to a partnership transaction are evidence against
the firm : 1 Lindley on Partnership, § 264 ; Welsh v. Speakman,
8 W. & S. 257 ; Taylor v. Henderson, 17 S. & R. 453 ; Johnston
v. Warden, 3 Watts, 101 ; Reed v. Kremer, 111 Pa. 482 ;
Brown v. Beecher, 120 Pa. 590 ; Wharton, Agency, § 679 ; Har-
risburg Bank v. Tyler, 3 W. & S. 373 ; Spalding v. Bank of
Susquehanna Co., 9 Pa. 28 ; Bank of Monroe v. Field, 2 Hill,
445 ; Aid Society v. McDermond, 12 W. N. 73.

The Home Savings Bank was a joint stock company or a
partnershp : Oliver's Estate, 136 Pa. 58.   But whether it is a
joint stock company or a partnership, the liability of the ap-
pellant is practically the same : Cook on Stockholders, § 508 ;
Kellogg Bridge Co. v. United States, 15 Court of Claims, 111 ;
Westcott v. Fargo, 61 N. Y. 542 ; Witherhead v. Allen, 3
Keyes, 562.

All unincorporated banks are partnerships : Hess v. Werts,
4 S. & R. 359 ; Witmer v. Schlatter, 2 Rawle, 359 ; Ridgely
v. Dobson, 3 W. & S. 118 ; Beaver v. McGrath, 50 Pa. 479 ;
Fry's Account, 4 Phila. 133 ; Protchett v. Schaefer, 11 Phila.
166 ; Shamburg v. Fowler, 25 Pitts. L. J. 148 ; Thomson's
Est., 5 W. N. 14.   So are unincorporated joint stock compa-
nies : Kramer v. Arthurs, 7 Pa. 165 ; Hedge & Horn's Ap., 63
Pa. 273 ; Clarke's Ap., 107 Pa. 436 ; Oliver's Est., 136 Pa. 43.

The shareholders are therefore each personally liable for all
the debts of the bank : 2 Lindley on Partnership, 1421, § 1083 ;
Pettis v. Atkins, 60 Ill. 454 ; 1 Lindley on Partnerships, 518 ;
Hodgson v. Baldwin, 65 Ill. 532 ; Boston & Albany R. R. v.
Pearson, 10 Reporter, 81 ; Jessup v. Carnegie, 12 Jones & Sp.

261; Shamburg v. Ruggles, 83 Pa. 148; Clark v. Fletcher, 96 Pa. 416; Christy v. Sill, 131 Pa. 492; Weiterhausen v. Shaner, 26 Pitts. L. J. 213.

No partnership is limited in Pennsylvania unless it be formed in strict compliance with the acts of assembly relating to limited partnerships: Andrews v. Schott, 10 Pa. 47; Richardson v. Hogg, 38 Pa. 155; Vandike v. Rosskam, 67 Pa. 330.

If parties seek to have all the advantages of a partnership and yet limit their liability to creditors, they must comply strictly with the act of June 2, 1874, P. L. 271: Maloney v. Bruce, 94 Pa. 249; Eliot v. Himrod, 108 Pa. 579; Hite Natural Gas Co.'s Ap., 118 Pa. 436; Hill v. Stetler, 127 Pa. 145; Vanhorn v. Corcoran, 127 Pa. 255; Sheble v. Strong, 128 Pa. 315.

While it may be admitted that participation in profits does not conclusively establish a partnership relation; but such participation must be considered as evidence tending to establish that relation, and in the absence of other proof is to be regarded as sufficient to make out a partnership: Meehan v. Valentine, 19 W. N. 506: Walker v. Tupper, 152 Pa. 1; Cook on Stockholders, sec. 206; Mendenhall's Case, 9 Bankruptcy Register, 497; Whipple v. Parker, 29 Mich. 369; Foster v. Pray, 29 N. W. R. 155; Nat. Bank of Watertown v. Landon, 45 N. Y. 412; 1 Lindley, §§ 17, 91; Parsons, pages 8, 9.

. That where a body professing to be a corporation has been expressly dealt with it cannot question its corporate existence, for the purpose of charging its members individually as if they were partners, is the law only as applied to de facto corporations: Morawetz, § 740; Planters & M. Bank v. Padgett, 69 Ga. 159; McCarthy v. Lavasche, 89 Ill. 270.

Two things must be shown to establish the existence of a corporation de facto, viz.: first, the existence of a charter or some law under which such a corporation with the powers assumed might be created; second, a user by the party assuming to be such corporation, of the rights claimed to be conferred by such charter or law: Methodist Episcopal Union Church v. Pickett, 19 N. Y. 482.

The rule laid down by Morawetz, however, has not been universally accepted as in Glenn v. Bergmann, 2 W. R. 597; Hurt v. Salisbury, 55 Mo. 310.

Persons who enter into a contract in the name of a corporation which has no legal existence, become individually liable thereunder.   One who contracts with others under a corporate name believing that he is contracting with a corporation, when none in fact exists, is not, in a suit against such persons to enforce the contract, estopped to deny that they were a corporation: Sheble v. Strong, 128 Pa. 315 ; Cook on Stockholders, § 233, note 2.

The prevailing fault of the auditor is that his conclusions are almost wholly based upon inferences drawn from alleged facts which have no existence, and they are not therefore warranted by the facts proved in the case, and, although affirmed by the court below, is strong ground for a reversal of the decree in this case : Hindman's Ap., 85 Pa. 466 ; Milligan's Ap., 97 Pa. 525; Jacob's Ap., 107 Pa. 137 ; Cake's Ap., 110 Pa. 65.

*D'A. Overton, M. F. Elliott* with him, for appellee.— The finding of fact by an auditor that a party sought to be charged as a partner was not a partner, either in fact or as to third parties, being approved by the court below, will not be reversed in the Supreme Court except for clear error : Boffenmyer's Est., Hess's Ap., 150 Pa. 540 ; Stevens v. Phila. Ball Club, 142 Pa. 52.

We deny that a partnership is the necessary result of an abortive attempt to organize a corporation, or of the purchase of stock in good faith by a person in an institution which he has reason to suppose is legally incorporated.   To hold otherwise would daily jeopardize the fortunes of the thousands of individuals who deal in them: Gartside Coal Co. v. Maxwell, 6 A. & Eng. Corp. 359; Morawetz on Private Corporations, sec. 740; Blanchard v. Kaull, 44 Cal. 440; Fay v. Noble, 7 Cush. 188 ; Spahr v. Farmers' Bank, 94 Pa. 429; Arnold v. Cochran, 58 Pa. 399; Stevens v. Phila. Ball Club, 142 Pa. 52.

OPINION BY MR. JUSTICE WILLIAMS, October 2, 1893 :

This case involves substantially the same question that was heard and determined in Hallstead v. Coleman, 143 Pa. 354. The appellant seeks to charge the estate of Henry Gibbs with money deposited by him, as guardian, in the Home Savings Bank, located at South Waverly, on the theory that the bank

was a general partnership and that the decedent was one of the partners.   The appellees deny that the Home Savings Bank was a partnership, and assert that the decedent purchased shares of stock in the bank, as and for the shares of stock in an incorporated bank, and not otherwise.   At this point it seems desirable to define the words over which this contest extends.

First, what is a corporation ?   The several answers given by text writers may be reduced to the following formula: A corporation is an artificial person created by law as the representative of those persons, natural or artificial, who contribute to, or become holders of shares in, the property entrusted to it for a common purpose.   As it is the creature of positive law, its rights, powers and duties are prescribed by the law.   Beyond the legitimate purposes which it was created to serve, and the lines of limitation the law has drawn around it, it is without power to act or capacity to take.   Thus a banking corporation while fully competent to do what is usual and necessary in its own business, may not own and operate a railroad, or engage permanently in any other business than that for which it was created.   It has neither the legal capacity, nor the right, to do so ; and if it undertakes to go in any direction beyond its corporate powers its acts are ultra vires.   The creation of a corporation is not within the power of the individuals who subscribe to its stock.   It is exclusively the work of the law ; and the best evidence of the existence of a corporation is the grant of corporate powers by the commonwealth.

Second: What is a corporation de facto ?   It is an apparent corporate organization, asserted to be a corporation by its members and actually acting as such, but lacking the creative fiat of the law.   In Taylor on Private Corportions, 145, it is said that a de facto corporation may exist " when a body of men are acting as a corporation under color of apparent organization, in pursuance of some charter or enabling act."   Their organization may be imperfect, so that upon a quo warranto they could not show a sufficient compliance with the law to justify the exercise of corporate powers, but, as to parties dealing with them, and as to each other, they are estopped to deny that they are what they hold themselves out to be.   In a recent case in Minnesota, Finnegan v. The Knights of Labor Building Association, it was held that a de facto corporation exists when these

three things concur, viz. : A law under which the alleged cor-
poration might be created ; an attempt to organize under the
law ; an assumption and exercise of corporate powers under
such attempted organization. In Church v. Pickett, 19 N. Y.
482, only two things were held necessary, viz., " The existence
of a charter or law under which a corporation with the powers
assumed might be lawfully created ; and a user by the party
to the suit of the rights claimed to be conferred by such a char-
ter or law." Where there has been a substantial compliance
with the law the corporation is, of course, de jure. Where there
has been no substantial compliance, but there has been never-
theless an assumption and exercise of corporate powers in pur-
suance of an attempted organization, the alleged corporation is
such de facto only. The Minnesota courts hold the correct
rule, and three things are necessary to create the liability : a
law or charter under which an organization de jure might be
effected ; an attempt to organize which falls so far short of the
requirements of the law or charter as to be ineffectual ; an as-
sumption and exercise of corporate powers notwithstanding the
failure to comply with the law or charter.

Third : What is a partnership ? Perhaps the best definition
is that given by Story : a relation created by a " contract be-
tween two or more persons to place their money, effects, labor,
or skill, or some or all of them, in lawful commerce and divide
the profits between them." Its foundation is a contract express
or implied. It results from the act of the parties, not from the
act of the law : Hedges's Ap., 63 Pa. 273 ; 17 Am. and Eng.
Encycl. of Law, 829 ; see also 8 W. & S. 63 ; 16 Ohio, 166 ; 14
Johns. 318 ; 49 Ill. 437. But as to third parties one may be
held liable as a partner by implication of law arising upon his
own acts contrary even to his own intention. Thus the officers
and acting members of a corporation de facto may be liable as
partners if their conduct has led others to trust the concern
upon that basis : 47 Conn. 443. But without a contract of
partnership, or such acts and declarations as lead others to in-
fer its existence and to extend credit on that basis, there is no
foundation on which liability as a partner can rest. The best
evidence of the existence of a partnership, is the contract creat-
ing it. If proof of the contract is not within reach, its existence
may be inferred from proof of contribution to the partnership

stock. If direct proof of contribution cannot be had it may be inferred from participation in profits. In the absence of all this the acts and declarations of the parties sought to be charged may be resorted to. Participation in profits is not conclusive proof of the existence of the partnership relation, Edwards v. Tracy, 62 Pa. 374; but both in England and in this country it is cogent evidence upon the question. It puts the defendant upon his proofs explanatory of the fact. If he is able to show that such participation was referable to some other reason, such as compensation for services rendered by him as agent, broker, salesman or otherwise, the prima facies is overcome. So if the participation in the profits is referable to some other relation than that of partnership between the participants, such as membership in a joint stock association, or a corporation, the effect of proof of participation will be overcome.

In the light of these well settled rules, let us consider briefly the position of the parties and the important findings of fact made by the learned auditor in this case. The claimant's right to share in the fund in court rested on the theory that the Home Savings Bank in which the money of his wards had been deposited was a partnership, and that the decedent was a partner. The burden of proving the fact that the bank was a partnership was on him; and as was said in Hallstead v. Coleman, 143 Pa. 364, " until that proof was given, the defendants were not called upon to enter upon their defence." The proof made upon this subject showed the organization of a bank under the name of the Home Savings Bank, with a president, cashier, and a board of directors. This is the mode of organization usually adopted by corporations, and did not tend to prove a partnership. It was then shown that the decedent bought and held certificates of stock in the bank, after its organization, which recited not the formation of a partnership, but the organization of a bank under the laws of the state, and the division of its capital into shares of one hundred dollars each. This is not the usual way in which partnerships are created and partners admitted. It is the usual way in which stocks are issued and transferred in corporations. Proof was then made of the receipt by the decedent of several dividends upon his stock. These did not purport to be shares in the profits of firm business, but dividends, declared in the manner usual among corpo-

rations, upon the stock of the bank; and were paid by dividend checks drawn under the authority of a board of directors. The only other evidence was the returns made by the officers of the bank under the tax law of 1879, which threw very little light upon the character of the organization of the bank. Upon this proof the questions for the auditor were whether the bank was shown to be a partnership, and the decedent a partner. The bank did business for a number of years and then failed. Its books and papers were in the hands, or subject to the control of, the receiver. The manner of its organization was not shown; the partnership agreement, if any such existed, was not produced. No proof was given that the officers or stockholders claimed, or held out to the public, that the stockholders were partners or the bank a partnership enterprise. It was not alleged that the decedent participated in any manner in the business, or exercised any control over it. The whole case against him rested on the fact that he had purchased shares in a bank, then organized and doing business, and received dividends declared by the directors and paid to him in a cashier's check. We are not surprised that the learned auditor was led to ask, " What is there in all this evidence from the beginning of the business to the failure, tending to prove a partnership ? " nor that he answered his own question by holding that this proof was insufficient to establish, prima facie, the existence of the partnership relation. On the other hand there was much tending to show that Henry Gibbs understood that he was the holder of stock in an incorporated bank; and that the bank assumed and exercised corporate powers; and was dealt with by the public as a corporation. The form of its certificates, the manner of their transfer, the election of directors by the stockholders, the management of the business of the bank by the directors and the officers elected by them, the mode of declaring and paying dividends, were all suggestive of a corporation. They were not suggestive of a partnership. We are unable therefore to say that the auditor erred in finding that the bank was not shown to be a partnership. The learned judge who heard the exceptions to this report seems to have concurred with the auditor, and we require under such circumstances to be satisfied that a mistake was made before interfering with the findings. We are not so satisfied; but are of opinion that the state of the

evidence justified the auditor's conclusion. This disposes of the whole case.

It is said with earnestness and energy that this is a case in which the depositors deserve protection. We assent to this proposition. We can extend protection to them however in accordance with the established rules of law, and in no other manner. What the Home Savings Bank was in its organization, in what capacity those who held its stock were liable to its depositors, are questions not now before us. It may have been a corporation de jure, a corporation de facto, a joint-stock association, or a general partnership so far as we are able to declare. What we say is that the evidence in this case is not sufficient to make a case, prima facie, against Henry Gibbs as a partner, or the bank as a general partnership. It does not appear that the bank was organized as a partnership, conducted business as a partnership, or held itself out to the public as such. It does not appear that Gibbs understood the bank to be other than what his certificates of stock indicated; or that he treated the business of the bank as that of a firm, or exercised the slightest control over, or influence upon it; or misled the appellant or any other depositor by act or word as to his relation to it. What does appear is that he purchased shares of stock in the usual manner, and received some dividends thereon. These circumstances are naturally referable to the relation of a stockholder to a corporation; and, standing alone, are not proof, prima facie, of the appellant's proposition that the bank was organized as a partnership, and that the purchase of shares of stock made Gibbs a partner. If he had received profits from a business apparently conducted by a partnership, he would have been put upon his explanation, and, failing to make one, would have been held to be a partner. The burden in that case would have been on him. Having received dividends, declared by a board of directors upon the stock into which the capital of the bank was divided, he could rest securely upon the apparent character of the transaction and the inferences naturally to be drawn from it. The burden of explanation necessary to give another character to the dividend declared, and to the stock on which it was paid, was on him who asserted that such other was the true character of these circumstances.

It was also said in the argument that the recitals in the stock certificates are not evidence of actual incorporation as against a stranger. This must be granted. They do not prove incorporation. But the appellees are not bound, upon the evidence in this case, to prove incorporation. The significant question is, where is the proof that this bank was organized or conducted as a partnership concern? The certificates do not prove that, but the inferences naturally drawn from them tend the other way. It will not do for the appellants to say : " We have shown that the decedent was a stockholder in this bank and received dividends upon his stock, now you must show that the bank was incorporated or be liable to us as a general partner." This is attempting to change the burden of proof. Again the learned counsel says : " This is the sole fact (the form of the certificate) that is before the court, and if it is sufficient to authorize a court to find an incorporation in this case why is it not in any other ? " The court below did not find that the bank was a corporation. That question was not before it. It was alleged by the appellant to be a partnership, but the auditor and the judge of the court below regarded the evidence in support of that allegation insufficient to justify a finding that the bank was not " organized by act of the legislature of Pennsylvania," as its certificates alleged, but by the parties as copartners. The appellant failed not because the bank was held to be a corporation, but because it was not shown to be a partnership. Until evidence in support of the appellant's position is given sufficient to lead fairly to the conclusion that the bank was organized as a partnership ; or that Henry Gibbs contracted to become a partner when he bought his stock ; or that he led the public by his acts and declarations to deal with him or the bank on the basis of his being a partner ; there is nothing that makes it the duty of his representatives to enter upon a defence, or that makes it possible for the court to decide upon the character of the bank. In such a state of the evidence, the court can only say, as the court below said in this case, " It is not shown, that the bank is a partnership," and for that reason the claimant fails.

The assignments of error are not sustained and the decree is affirmed.