## No. 2104.

## W. R. GRAHAM v. THE CITY OF GREENVILLE.

1. MUNICIPAL CORPORATIONS—LEGISLATIVE POWER OVER.—The legislature may annex, or authorize the annexation, of territory contiguous to the limits of an incorporated town or city, without the consent of the

persons residing either in the corporation or the annexed territory. If the legislature should, however, prescribe that such territory should not be annexed to a municipal corporation unless a majority of the persons living therein shall assent thereto, this would not be a delegation of legislative power, but a concession to the parties to be affected of the privilege of accepting or rejecting a charter.

2. CONSTITUTIONAL LAW—ELECTIONS.—The provision of the Constitution requiring all elections by the people to be by ballot, is no restriction on the power of the legislature to provide that the will of persons desiring territory to be annexed to a contiguous municipal corporation may be ascertained in some other manner than by public election.

3. STATUTE CONSTRUED—ELECTIONS.—Neither Article 503 of the Revised Statutes, nor any other law, provides in terms that the will of the inhabitants of a territory proposed to be annexed to an adjoining city, shall be ascertained at an election held, as in cases of other elections by the people. The persons interested may express their preferences on the subject by any method of voting which is satisfactory to themselves and to the city council. When it is shown by the proper affidavit that a majority have favored annexation, the city council is authorized to receive the territory on which they reside into the limits of the city.

4. SAME.—Even if the vote or method of ascertaining the will of the majority of the inhabitants is not expressed in accordance with the Constitution and laws, the action of the city council in admitting the territory is not void. The State alone can annul their act in a proceeding begun for that purpose, and its legality can not be questioned by a tax payer living in the annexed territory, in a proceeding by injunction to restrain the collection of a tax on his property levied by the city authorities.

5. CASES APPROVED.—Mendota v. Thompson, 20 Illinois, 200; Keltering v. Jacksonville, 50 Illinois, 39, and Bird v. Perkins, 33 Michigan, 28, approved.

APPEAL from Hunt. Tried below before the Hon. J. A. B. Putman.

*Matthews & Neyland,* for appellant.

*E. W. Terhune,* for appellee, cited: 2 Dillon on Municipal Corporations, section 720; Cooley's Constitutional Limitations, fourth edition, 311; Red v. Johnson, 53 Texas, 288; George v. Deane, 47 Texas, 84; State v. Weatherly, 45 Missouri, 17; People v. Galesburg, 48 Illinois, 485; 1 Dillon on Municipal Corporations, section 143, and note; Revised Statutes, Articles 3381, 3295 and 4125; State v. Binder, 38 Missouri, 450; State v. Mayor, etc., 37 Missouri, 270, and St. Joe v. Rodgers, 16 Wallace, 644.

WILLIE, CHIEF JUSTICE. On the twelfth of March, 1884, the appellee was a duly incorporated city, having accepted as its

charter the provisions of Title XVII of the Revised Statutes. On that day the following paper was filed in the mayor's office:

"To the honorable mayor and city council of the city of Greenville: We the undersigned, whose names are hereto subscribed, declaring our vote in favor of or against annexation of territory, or extending the limits of the city of Greenville, as hereinafter described and set out, to wit: (here follow the bounds of the territory) hereby petition your honorable body for all orders and proceedings necessary for the annexation of territory above described as part and parcel of said city of Greenville."

| For annexation. | Against annexation. |
| --- | --- |
| (Here follow forty-four names, including that of appellant.) | (Here follow thirteen names.) |

All the signers were qualified voters, and resided in the territory described; and the forty-four names favoring annexation constituted a majority of the voters of such territory.

On the same day, O. D. Moulton, A. G. Pace and B. F. Britton, qualified voters residing in said territory, filed in the mayor's office an affidavit to the effect that, on the ...... day of April, 1884, a vote was taken for the purpose of determining whether a majority of the inhabitants of said territory, qualified to vote for members of the legislature, were in favor of becoming a part of the city of Greenville; and that forty-four persons, being a majority of such qualified voters, had voted in favor of the proposition and fourteen against it.

This affidavit was certified by the mayor to the city council, and an ordinance was thereupon passed receiving the territory into the corporate limits of Greenville, and proclamation to that effect made by the mayor. A tax for the year 1885 was levied by the council upon the appellant's property, lying within the annexed territory, and this suit was brought for the purpose of restraining its collection.

In addition to the facts just stated, it was shown that, when the above petition was in circulation for signers, several persons signed the paper under the belief that it was merely a petition for an election to determine the question of annexation; but how many thus signed was not shown.

It was also proved that the signing of this paper was the only mode of election resorted to for determining the question of annexation. The tax on appellant's property was the first tax assessed upon the annexed territory after it became a part of the

city. It was also shown that the appellant had accepted positions of trust under the city government as extended.

The court gave judgment upon the law and the facts against Graham, and from this judgment he has appealed to this court. The appellant contends that the property is not liable to taxation by the city, because the annexation was not legally made, the vote upon which it was based having been taken otherwise than by ballot.

Article 503, Revised Statutes, reads as follows: "Whenever a majority of the inhabitants qualified to vote for members of the State legislature of any territory adjoining the limits of any city, accepting the provisions of this title, to the extent of one-half mile in width, shall vote in favor of becoming a part of said city, any three of them may make affidavit to the fact, to be filed before the mayor, who shall certify the same to the city council of said city. The said city council may by ordinance receive them as part of said city; from thenceforth the territory so received shall be a part of said city, and the inhabitants thereof shall be entitled to all the rights and privileges of other citizens, and bound by the acts and ordinances made in conformity thereto and passed in pursuance of this title."

The power of the legislature to extend the limits of a city so as to include adjoining territory is not restrained by the Constitution, and the manner of doing so is prescribed only in this respect, that in case of a city of ten thousand inhabitants or less, this change in the charter shall be effected by a general law. Without some constitutional restraint, it is now conceded almost universally, that the legislature may annex, or authorize the annexation, of contiguous territory without the consent of the persons residing in the corporation or the annexed territory. 1 Dillon on Municipal Corporations, section 185.

The power of the legislature to grant, alter, amend or recall, the charter under which the corporation is acting is supreme, and can not be irrevocably transferred to any local community within its limits. (Blessing v. City of Galveston, 42 Texas, 641.)

But while the legislature is not bound to obtain the assent of the persons residing within the contiguous territory before annexing it to a city, it may do so and provide that the annexation shall not take place unless a majority of such persons shall assent thereto in some manner prescribed by the legislature. This is "in no just sense a delegation of legislative powers, but merely

a question of the acceptance or rejection of a charter." (1 Dillon on Municipal Corporations, section 44, and authorities cited.)

The legislature having power to provide by general law for the extension of the corporate limits of cities of ten thousand inhabitants or less, with the assent of a majority of the residents of the territory proposed to be annexed, has certainly a right to prescribe the manner in which their wishes shall be ascertained.

The Constitution says that, in all elections by the people, the vote shall be taken by ballot, but does not provide that the will of a limited number of people on any subject in which they may be interested shall be ascertained in no other way except by a public election. We are pointed to no clause in that instrument which either directly or by implication compels the legislature, in case it proposes to ascertain whether the people living near a city wish to be annexed to it, to submit that question to them at a public election. With the unlimited power over municipal corporations possessed by the legislature, it may provide for an extension of their limits upon petition of a majority of persons residing within the territory proposed to be annexed, or upon their request ascertained in any other manner as well as by votes given at a public election. Yet it is only in the latter case that the provision of the Constitution as to voting by ballot would have any application.

Neither Article 503 of the Revised Statutes nor any other law of our State provides in terms that the will of the inhabitants of the territory proposed to be added to an adjoining city shall be ascertained at an election held, as in cases of elections by the people.

The Article recited does not provide for an order for an election, nor by whom it is to be issued, nor for any notice to be given, nor for the time, place and manner in which it shall be held, nor to whom the returns shall be made. In fact none of the machinery provided in cases of popular elections, and none of the safeguards thrown around the ballot box to obtain a fair expression of the popular will, are prescribed by this Article; and we look in vain for them in other portions of our statute law.

The officers who order, supervise and pass upon the returns of other elections have nothing to do with one of this character. No one has authority to manage it, decide as to the qualifications of voters or declare the result. The only evidence as to the vote furnished to the city council is the affidavit of three of the voters, and they are required to state no more than that a majority of the

qualified voters residing in the territory proposed to be annexed had voted in favor of becoming a part of the city.

We think that, if the legislature had intended that the vote should be taken by ballot, they would have prescribed some method of procuring in this way a fair expression of the will of the voters, and of preserving the purity of the ballot box, as they are required by the Constitution to do in all cases where an election of the people is had by ballot. The loose and informal manner in which an election of the character we are considering would necessarily be conducted, precludes the idea that the legislature intended that this should be the only manner in which the wishes of voters residing near a city should be ascertained upon the question of annexation. Having the power to ascertain their wishes in this respect in any manner the legislature might choose, it is not to be presumed that they prescribed a method which could not be properly carried out without the aid of other legislation, which was not provided. We think that the voters interested were allowed to express their preferences on the subject by any method of voting which was satisfactory to themselves and to the city council, and that, when it was shown by the proper affidavit that a majority had favored annexation, the city council was authorized to receive the territory of their residences into the city limits.

But admitting that the vote was taken in a manner not sanctioned by the Constitution and laws, it was but an irregularity which did not render the action of the council void and ordinances passed in reference to the annexed territory of no effect. If a municipality has been illegally constituted, the State alone can take advantage of the fact in a proper proceeding instituted for the purpose of testing the validity of its charter. When the question arises collaterally, says Mr. Cooley, "the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the State as such." And this though the manner of incorporation prescribed by the Constitution had not been followed. (Cooley's Const. Lim., 312; Mendota v. Thompson, 20 Ill., 200; Kettering v. Jacksonville, 50 Ill., 39; Bird v. Perkins, 33 Mich., 28.)

Mr. Dillon, in his work on Municipal Corporations, thus states the law: "In proceedings to enforce ordinances, the illegality of the corporate organization can not be shown to defeat a recovery. In such a collateral proceeding, evidence that the corporation is acting as such is all that is required." (Art. 418. See also

Decorah v. Gillis, 10 Iowa, 234; Coles County v. Addison, 23 Ill., 383.)

And in our own State, in the case of Anderson County v. International & Great Northern Railroad Company, 52 Texas, 228, a petition was held defective which set up the illegality of a tax on the ground that less than two-thirds of the qualified and registered voters of the county had voted to issue the bonds, for the payment of the interest on which the tax was levied. This court said "that if the result of such an election is by law to be ascertained and declared by any tribunal, the action of that tribunal is conclusive, unless it be impeached or sought to be revised in a direct proceeding instituted in time;" and cited numerous authorities to support the proposition. (See also Austin v. Gulf, Colorado & Santa Fe Railroad Company, 45 Texas, 236.)

The extension of the city of Greenville, effected in the manner before stated, had been acquiesced in for a long time, by the State, the inhabitants of the city as it existed before the extension, and the residents of the annexed territory. The corporation has continued ever since to exercise its corporate powers over the annexed territory in the same manner as over the remainder of the city. The State has instituted no quo warranto proceeding questioning the legality of the extension. The manner in which the vote was taken met with the approval of the council, and was not objected to at the time by any resident of the annexed territory, not even by the appellant himself. No direct proceeding was ever instituted to test the validity of the vote or other proceedings by which the annexation was accomplished; and they were never questioned until this collateral attack was made upon them by the appellant, who had directly sanctioned them by accepting position under the city government.

We think the ordinance levying the tax upon the appellant's property was legal, and that neither his petition nor the facts in proof were sufficient to entitle him to the injunction for which he prayed, and the court did not err in rendering judgment for the appellee. The judgment is affirmed.

*Affirmed.*

Opinion delivered November 26, 1886.