### HARBIN INDEPENDENT SCHOOL DIST. et al. v. DENMAN. (No. 168–3173.)

(Commission of Appeals of Texas, Section B. June 2, 1920.)

1. Schools and school districts ⚖➡24(2)—Enjoining assessment of taxes held collateral attack on corporate existence of district.

A suit to enjoin assessment of taxes on plaintiff's land by defendant school district, on the ground that the land was in another district and that the incorporation of the former district was void, in that it encroached on the latter district when it included plaintiff's land, was collateral attack upon the corporate existence of the defendant district, and not maintainable by an individual.

2. Schools and school districts ⚖➡32—Boundaries may not be changed indirectly by injunction after issuance of bonds.

The boundaries of a school district may not be changed, so as to reduce the taxable value of the property included in it after the district has issued bonds which are outstanding obligations, under Acts 29th Leg. (1905) c. 124, § 50, as amended by Acts 31st Leg. (1909) c. 12, by appeal to the injunctive power of the court, since the court cannot do indirectly what cannot be done directly by the commissioners' court.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by B. V. Denman against the Harbin Independent School District and others. The Court of Civil Appeals (200 S. W. 176) affirmed a decree for plaintiff, and defendants bring error. Reversed and rendered.

Chandler & Pannill, of Stephenville, for plaintiffs in error.

Hickman & Bateman, of Stephenville, for defendant in error.

#### Statement of the Case.

KITTRELL, J. On June 2, 1888, an election was held in Cottonwood, Erath county, for the purpose of determining whether or not said village should be incorporated for school purposes only. The election resulted in favor of incorporation, and the result was duly recorded in the records of the commissioners' court on June 20, 1888, together with the lines and boundaries of the district. No map of the district was ever filed in connection with the field notes, and it is clearly inferable that none was ever made.

On July 9, 1888, five trustees were elected for said district and the report of the election duly recorded. The land of defendant in error was included in the boundaries of said district. In December, 1898, the commissioners' court directed the county surveyor to subdivide the county into convenient school districts, which was done, and the boundaries of Cottonwood district were set

forth in the surveyor's report, as were also those of the Harbin school district.

In February, 1904, petition was filed in statutory form for an election to determine whether the inhabitants of the Cottonwood district should levy a tax of 20 cents on the $100 for the purpose of supplementing the state and county school funds. The election was held, the tax voted, and the result duly recorded. At a time not shown by any date, the line between the Cottonwood district and the Harbin district was changed, so as to transfer the property of two citizens from the Harbin to the Cottonwood district.

On December 2, 1911, by due statutory process, the Harbin district was duly incorporated by a vote of 40 to 2 for school purposes only. The metes and bounds of the district are set forth in the order reciting the result of the election, which order was duly recorded, and the boundaries include the land of the defendant in error. On December 11, 1911, the lands of three citizens were in accordance with the statute transferred from the Harbin district to the Oak Grove district, and the boundaries of the Harbin district were changed to conform to the conditions created by such transfer.

So far as a very meager statement of facts reveals, the Cottonwood school district was conducted in a changing and intermittent way, sometimes as an independent district, and sometimes as a common school district, apparently for the greater part of the time in the latter way. A witness who lived for several years in the district testified that—

"The teachers were paid by vouchers to county judge or county superintendent, just like a common school district, and it didn't claim to be an independent district, and didn't operate as such."

The Cottonwood district never issued any bonds, and never succeeded in obtaining recognition by the Attorney General as an independent district. The Harbin district issued bonds, which were approved by the law department of the state government, and the proceeds were used for the purpose of erecting a schoolhouse, and the bonds are still outstanding, and a sinking fund is provided for their redemption at maturity.

Defendant in error brought his action March 6, 1916, to enjoin the collection of the tax of 50 cents on the $100 levied by the Harbin district, on the ground that the Cottonwood independent district had never been dissolved or abolished, and is yet an existing district, and that as affects his lands the Harbin district had no legal existence. He alleged, further, that the Harbin district includes his lands, and taxes have been and will be in future assessed and collected upon their value. The county tax assessor and county tax collector and the members of the board of trustees of the Harbin district were joined as defendants, and prayer was made for injunction against them from the assessment or collection of taxes by the Harbin district against his land. The district court granted the prayer of the defendant in error, and the Court of Civil Appeals of the Eighth District affirmed that judgment.

Opinion.

Plaintiffs in error by proper assignments present the question of nonuser on the part of the Cottonwood district, and of the vagueness, indefiniteness, and insufficiency of the boundaries of that district; but the view we take of the preliminary, and, as we conceive the controlling, question in the case, makes discussion of these assignments unnecessary. As we understand the record, it is not alleged that the proceedings whereby the Harbin independent district was incorporated were not in all things regular, or that it is not duly performing all the purposes of its incorporation, or that it has not received recognition at the hands of the law department of the state, or that it has not issued and · sold bonds which are yet outstanding; but the only ground alleged as basis for injunctive relief is that its organization is not valid, in that it encroaches on the territory already included in another district, viz. Cottonwood district, and includes the land of defendant in error.

[1] Conceding all the defendant in error alleges as matters of fact to be true, and that there were irregularities or even illegalities in the incorporation of the Harbin district, which in a direct proceeding might be sufficient to invalidate its corporate existence, and that it is assuming authority and exercising powers with which it has not been legally vested, these are matters which can only be inquired into and determined in a suit brought for that purpose in the name of the state, or by some individual under its authority, who has a special interest which is affected by the existence of the corporation. It cannot be done by an individual suing to enjoin the collection of a tax levied by the authorities of the district. It was so held in Graham v. Greenville, 67 Tex. 62, 2 S. W. 742, and that holding has been consistently adhered to.

That case is cited as authority in the case of City of El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25. In the last-named case the city sued Mrs. Ruckman for taxes. She resisted on the ground that the city did not have valid control of its public schools. Her contention was sustained by the trial court, and the Court of Civil Appeals of the Fourth District certified the case to the Supreme Court. It was conceded that neither of two elections held with reference to the city taking control of its public schools was regular, or sufficient to constitute the city a school district, and it was so certified, and the Su-

preme Court was asked to answer whether, in view of that fact, taken in connection with the long-continued exercise of the powers of a school district, its legal existence could be inquired into in a suit by the city to recover taxes levied for the years 1894–1895. The Supreme Court answered the question in the negative. It said:

"When the creation of a public corporation, municipal or quasi municipal, is authorized by statute, and a corporation has been organized under color of such authority, its corporate existence cannot be inquired into * * * in a collateral proceeding."

That holding has never been departed from; on the contrary, has been followed at as late a date as the time of the decision of the case of Crabb v. Celeste School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146. In the Ruckman Case the city sued to recover taxes. In the instant case the plaintiff (defendant in error) sued to enjoin the levy and collection of the tax. Had he been sued as was the defendant in the Ruckman Case, and had set up as a defense the same contention he presented affirmatively in the trial court, his answer would have been subject to demurrer, on the ground that it involved a collateral attack on the validity of the corporation.

We are not able to perceive any distinction in principle between the two situations, because in one he would have been defendant, and in the other he is plaintiff. In either attitude his attack on the corporation would be distinctly collateral. No complaint was made by plaintiff in the court below, nor is any made here, that there has been any such action taken by the commissioners' court as would have justified the exercise of the supervisory power of the district court which was invoked in the cases of McLaughlin v. Smith, 105 Tex. 330, 148 S. W. 288, Dubose v. Woods (Civ. App.) 162 S. W. 3, and Williams v. Woods (Civ. App.) 162 S. W. 1031. The sole ground on which he bases his prayer for injunctive relief is that the Harbin school district has no legal existence; hence has no right to exercise the sovereign power of taxation.

It certainly exists de facto, and has secured recognition at the hands of the state, which the Cottonwood district has never received, and it is performing all its functions as a body corporate, and its right so to do cannot be called in question in the manner attempted by plaintiff in the court below. The duty does not devolve upon us to discuss the reasons for the holding so long prevailing. They are based on sound principle, and supported by high and long-recognized authority. The late Chief Justice Willie said:

"If a municipality has been illegally constituted, the state alone can take advantage of the fact." Graham v. Greenville, supra.

Mr. Cooley says:

"When the question arises collaterally, the courts will not permit its corporate character to be questioned if it appears to be acting under the color of law, and recognized by the state as such" (a corporation).

In the Ruckman Case, Chief Justice Gaines said:

"The election was irregular, and for that reason might have been set aside in a proper proceeding instituted for that purpose. But, having been acquiesced in by the state and all parties in interest, * * * it [the city] was an effective and legal control."

The fact has not been lost sight of that the facts in the cases cited were not identical with those in the case before us, nor were the grounds of defense the same; but, regardless of such differences, the fact remains that a corporation, organized pursuant to the forms of law, and the legal existence of which has been recognized by the superior sovereign, the state, and which is performing all the functions for which it was organized, is attacked, and its right to exist called in question in a collateral way, which cannot be done whatever may be the grounds upon which the attack is based.

Applying the established rules of law to the instant case, we find that defendant in error had lived for about 16 years where he was living at the time he brought his action. The Harbin independent school district was organized in 1911. So far as the record reveals, he made no protest nor offered any objection to the incorporation of his property within its territory, nor did he invoke the process of the law to prevent such action.

He alleges no inconvenience as regards access to the schools; nor does he impute any improper purpose or action to the commissioners' court. He waited until the district had been organized five years, and until four years after it had issued bonds, before he took any action by which the legal existence of the district could be tested, and then chose a method which was ineffective and unavailable.

[2] If the plaintiff below could succeed in achieving his purpose, he would, by changing the boundaries of the district, reduce the taxable value of the property included in it, after the district has issued bonds which are outstanding obligations. Such change is expressly forbidden by section 50, c. 124, Acts 29th Leg., as amended by chapter 12 of the act of February 18, 1909, and that cannot be done indirectly, by appeal to the injunctive power of the district court, which cannot be done directly by the commissioners' court.

It follows from what we have said that the district court erred in granting defendant in error's prayer for injunction. We recommend that the judgments of the district

court and of the Court of Civil Appeals be reversed, and judgment be here rendered for plaintiffs in error.

PHILLIPS, C. J. We approve the judgment recommended in this case.