**FLOYDADA INDEPENDENT SCHOOL DIST. et al. v. SHIPLEY.*** 
(No. 1929.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 22, 1922. Rehearing Denied March 29, 1922.)

1. **Schools and school districts** ⬤⟞21—**Districts governmental agencies within exclusive control of Legislature.**

Districts are governmental agencies, and are within the continued exclusive control of the Legislature, and may be enlarged, diminished, or extinguished by it, except in so far as restrained by the Constitution.

2. **Statutes** ⬤⟞230—**Not implied that amendment requires doing of useless thing.**

In construing an amendment to a statute, it will not be implied that the Legislature intended to require the doing of a useless thing.

3. **Statutes** ⬤⟞230—**Body, caption, and emergency clause to be considered in construction.**

In construing an amendment to a statute, the court may look to the body of the act, its caption, its emergency clause, the existing facts or conditions at the time, and the body of the act of which the amendment is a part.

4. **Schools and school districts** ⬤⟞38—**Statute held to add territory to existing district without election.**

Loc. & Sp. Acts 33d Leg. (1913) c. 44, amending Acts 29th Leg. (1905) c. 137, added territory to the Floydada Independent School District without the necessity of a vote of electors in the new territory.

5. **Schools and school districts** ⬤⟞24(2)—**Validity of district to which territory was irregularly added can be attacked only by state in direct action.**

Where territory was added to an existing school district irregularly without a vote of the electors in the new territory, and the people associated themselves for school purposes and actually existed as a corporation, the state alone, by direct proceeding in the nature of a quo warranto under Rev. St. art. 6398,

could attack it, and a taxpayer could not, by injunction to restrain collection of taxes, assail the incorporation.

Appeal from District Court, Floyd County; R. C. Joiner, Judge.

Action by W. A. Shipley against the Floydada Independent School District and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Ayres & Nelson, of Floydada, for appellants.
Williams & Martin, of Plainview, for appellee.

HUFF, C. J. This is an appeal from a judgment enjoining and restraining the appellant school district, its trustees and tax collector therein, from levying or collecting any taxes against the land of appellee, Shipley, for the support of schools in the district, or to pay interest or provide a sinking fund upon any former bond issue of the district.

The appellee, by his petition for injunction, alleged: That the Twenty-Ninth Legislature permitted the school district to incorporate as an independent school district; that acting under that act (Acts 29th Leg. [1905] c. 137) the electors residing in the territory therein defined voted to incorporate, and after the incorporation a tax was voted of 50 cents on the $100 valuation in the district to support and maintain the schools therein, which tax has been regularly levied, assessed, and collected since that time. A bond issue of $4,000 by vote was authorized in 1906, and in 1910 a bond issue of $20,000 was voted, and a tax sufficient to pay the interest and sinking fund on said bonds for all the years up to and including the year 1920. March 15, 1913 (Loc. & Sp. Acts 33d Leg. [1913] c. 44), the Legislature amended section 2 of the former act, so as to extend the boundaries of the district, including additional territory, which included the lands of appellee, Shipley. Since 1913, and including 1920, the board of trustees annually levied 50 cents on the $100 valuation, in the district, including the new territory added by the act of 1913. That there had never been an election held within the district after the amendment of 1913 or within the added territory to determine the question whether or not such territory as enlarged would incorporate as the Floydada independent school district, nor whether the taxes, or any of them, should be levied in the district. That no kind of bond issue had ever been submitted to a vote of the electors of the district. That March 14, 1921, there was held a pretended election in the district as enlarged, and bonds were voted in the sum of $90,000. That by virtue thereof bonds will be issued. That the election was void for the reasons

---

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 17, 1922.

above given and for the further reason that the election was held under the terms and conditions of the law as it existed prior to January 1, 1921, when in fact the law had been repealed. That on June 4, 1921, another pretended election was held within and for the district, for the purpose of determining whether a maintenance tax of $1 on the $100 valuation, should be levied. "That said election was illegal for the reason that no district exists in which such election was held, the qualified voters within said territory never having heretofore voted to incorporate same as an independent school district." January 9, 1921, a tax was levied in and for the district of 94 cents for maintenance of schools and tax of three-fourths cents and 5¼ cents, respectively, to take care of the bond issues of 1906 and 1910, and unless restrained appellants will collect a tax to pay interest and provide a sinking fund for the $90,000-bond issue. That appellee's land, consisting of several hundred acres, is situated within the added territory, but wholly without the original district. The appellee also sought to recover taxes paid by him for the years 1917–1920, inclusive, and to restrain appellants from further levying and collecting taxes against his land.

The appellant answered that for eight years since the amendment of 1913, by reason of the added territory, the state, the board of trustees, and all citizens thereof, including appellee, treated the district as part of the independent school district, and without protest or objection appellee has paid taxes for eight years on his land, participating in all elections held therein, and accepting the benefits of the school therein; that he should not be heard to deny the existence of the school district, etc.

The case was tried without a jury, and is here alone upon the findings of the trial court. The court, by his findings set out in effect the provisions of the act of 1905, and finds thereunder an election was held as required by the act, incorporating the territory into the Floydada independent school district. That prior to the amendment of March 15, 1913, at two separate elections, bonds were voted. In the first the sum of $4,000 and the second in the sum of $20,000. He also finds: That the amendment of March 15, 1913, added additional territory to the district, setting out a description of the territory as contained in the amendment. That there was no election held by the district as enlarged to determine whether or not the additional territory would be added. That appellee's land is wholly located within the boundaries of the added territory and no part thereof is in the original Floydada independent school district. That this territory has been considered by the independent school district as enlarged by the amendment and as fully incorporated by the acts of the

Thirty-Third Legislature, and all parties with reference thereto have acted thereunder under the belief that the district embraced the additional territory without the necessity of a vote of the qualified voters thereof to determine the issue. The taxes have been levied and collected since the year 1913, within the enlarged boundaries. That appellee, without objection paid the school taxes levied by the district on his land. That in the year 1921 a bond issue of $90,000 was voted in the district, for the purpose of erecting a school building in the town of Floydada, and that appellee participated in that election. That he has never been required to pay any part of the bonds voted prior to 1913 or the taxes concerning said bonds. The territory attempted to be added lies south of the original district, a distance of five to seven miles from the town of Floydada.

The court, in his conclusions of law, finds the Thirty-Third Legislature amended section 2 of the act of 1905, the last-named act providing that the electors should vote upon the proposition of incorporation; that the last act only gave the electors of the enlarged territory the right to vote upon the question, and did not create new boundaries for the school district. It was necessary to embrace the new territory in the district that the electors vote upon the question of enlarging the district. For that reason appellee is entitled to an injunction restraining the Floydada independent school district from levying or collecting taxes on his land described in his petition.

The Twenty-Ninth Legislature, General Laws, p. 332, c. 137, provided for the incorporation of the Floydada independent school district, the caption reading:

"An act to authorize and permit the territory situated within the bounds of the town of Floydada in the county of Floyd and state of Texas and other land and territory adjacent thereto, to incorporate as an independent school district, for free school purposes only, to be known as the Floydada independent school district, with all the powers, rights and duties of independent school districts formed by incorporation of towns and villages for free school purposes only."

The first section of the act provides the territory described in the act is authorized and permitted to incorporate as an independent school district, under the name, etc. Second. "The territory hereby created into the said independent school district is hereby described and bounded as follows," setting out the boundaries. The third and fourth sections provide the manner of incorporating and holding the elections therefor in the territory. Fifth. If a majority of the votes cast favor incorporation, "said school district shall thereby be and become an incorporated school district under the name of the Floydada independent school district, and shall

have, possess and exercise all the powers, rights and duties of independent school districts formed by towns and villages incorporating for free school purposes only." Provision is also made for the election of trustees, etc. Sixth. The trustees and school board are vested with powers of like officers of independent school districts, formed for towns, etc.

The Thirty-Third Legislature, March 15, 1913, amended the above act, reciting in the caption: "An act to amend section 2 of a special act, entitled" (here setting out the caption to the former act) "so as to include in the district thus formed additional territory, and declaring an emergency." Section 2 was thereby amended so as to read:

. "Sec. 2. The territory created into said independent school district is hereby described and bounded as follows."

The boundaries are set out, including the new territory embracing also the former boundaries, and as enlarged includes the land of appellee not in the original boundaries of section 2 of the original act.

[1-3] It will be perceived the only question presented by the trial court's conclusions of law is the interpretation of the acts of the Legislature. That is whether the added territory upon the amendment became part of the Floydada Independent School District upon the passage of the amendment, or whether a vote was necessary in order to make it a part of the incorporation theretofore organized. The appellant advanced the proposition:

"The Legislature having the power to create an independent school district, has the power to enlarge the territorial limits of an existing independent school district."

And some other corollary propositions. Graham v. City of Greenville, 67 Tex. 62, 2 S. W. 742; City of Oak Cliff v. State, 97 Tex. 383, 79 S. W. 1. The appellee does not controvert the proposition, but apparently concedes it under the provisions of the present Constitution (section 3, art. 7), which provides:

"The Legislature may also provide for the formation of school districts by general or special law, without the local notice required in other cases of special legislation; and all such school districts * * * may embrace parts of two or more counties."

But it is insisted by appellee that the amendment did not become effective until a vote of the qualified electors in the new district had determined that matter. That read in connection with the original act, of which it is a part, it only extended to the voters in the district the privilege of creating the territory into a school district. The power being thus conceded, the only question is one of construction. It will be well, however, to keep clearly in mind the fact that school districts are governmental agencies, and are within the continued exclusive control of the Legislature. They may be enlarged, diminished, or extinguished by the Legislature, except in so far as restrained by the Constitution. This power is absolute with respect to enlarging or diminishing the agency established or recognized by the Legislature. The question presented: Was it the intent of the Legislature merely to permit the territory described in the amendment to form a body corporate, or was it the intent to add to an existing body the enlarged territory? There can be no question but under the special act of 1905 and under the findings of the trial court, Floydada independent school district was organized and in existence when the act amendatory was passed. The district was properly organized as a body politic and corporate under the original act. As an entity its powers were in full force and potent to maintain schools, levy and collect taxes, issue bonds, erect schoolhouses, etc., in its then prescribed territory. There was therefore no necessity of creating a new entity by the fiat of the Legislature or by a vote of the electorate. It existed. As a governmental agency the Legislature determined that this entity required additional territory. There was therefore no necessity of voting to create a body corporate. It existed and was potential; nor to vote to add to its territory, for that was added by the absolute power of the Legislature. Certainly it will not be implied the Legislature intended by the amendment to require the doing of a useless thing. In construing the act of the Legislature we may look to the body of the act, its caption, its emergency clause, the existing facts or conditions at the time of the amendment, and the body of the act, of which the amendment is a part.

[4] We believe the amendment evidences the intent on the part of the Legislature to add additional territory to an existing governmental agency, the Floydada independent school district, by virtue of its powers, which were not thereby surrendered to the electors of the territory so formed. It will be perceived there is a difference in the wording of section 2 in the original act and the amendment. It is manifest the Legislature recognized the existence of the school district as a corporate body. As originally drafted, section 2 reads: "The territory hereby created into said independent school district, is hereby described," etc. "Hereby created" refers to the caption and the body of the act, of which it is a part, permitting the electors in the district, by a majority vote, to create an independent district. It was upon the option of the electors that the power to create was conferred. While the amendment of section 2 reads: "The territory created into said independent school district is hereby de-

scribed." It would seem the omission of the word "hereby" before the word "created" negatives the idea that the option of the electors as expressed in the original act is necessary to create the enlarged territory into the named district, but implies by the power of the Legislature it is created into the district. The amendment in effect declares a created organization in the therein described territory. The caption of the amendment evidences it was not the purpose to go through the formality of creating a new governmental agency and elect new officers. The Legislature accepted the agency already created in the declaration "so as to include in the district thus formed additional territory." The district "thus formed" was recognized as an existing entity, and that it had been formed by the electors exercising their option as set out in the caption of the former act and quoted in that of the amendment and under the terms of the original act. Under legislative power additional territory was included in the corporation "thus formed," excluding, as we interpret the language, the necessity of a note to create a corporation in the territory described. It is not to be inferred therefrom that it was the intent of the Legislature to surrender its power to the option of the electors to add additional territory to an accepted and approved governmental agency then existing. It was evidently unnecessary to organize a corporation in order to maintain the policy of the state as to education through independent districts, since the Legislature had full constitutional powers to create or add to a district. We believe the trial court was in error in holding there was no school district in the territory authorized to levy and collect taxes on appellee's land.

[5] If the district was illegally constituted, the state alone can take advantage of the fact in a proper proceeding for that purpose. If the Legislature intended that the taking in of the new territory should be by a vote of the electors, yet it is manifest the school district, the trustees, the citizens, as well as appellee, recognized the authority of the district over the new territory, and it was treated as part of the body corporate. It was for all practical purposes treated as a de facto portion of the incorporated district. We think the rule requiring the state alone by a direct proceeding, instituted for that purpose, will apply; that appellee will not be permitted by injunction to restrain the collection of taxes and to assail the incorporation of the school district, in this indirect manner. Harbin Independent School District v. Denman (Tex. Com. App.) 222 S. W. 538; Graham v. Greenville, supra; Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146; Kuhn v. Port Townsend, 12 Wash. 605, 41 Pac. 923, 29 L. R. A. 445, 50 Am. St. Rep. 911. As to the bond issue for $90,000 and the taxes of $1 on the $100 valuation, we think the petition and the court's finding was sufficient to show that those issues were properly submitted to a vote of the qualified electors in the district. As to the taxes required to pay the interest and sinking fund on the bond issue for $4,000 in 1906, and the $20,000 in 1910, the court's finding of fact that appellee had never been required to pay any part of the bonds voted prior to 1913 or the taxes concerning the bonds will eliminate any question of illegal act against or threatened appellee's land, and therefore the case of Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146, is not applicable in this case to the rule therein declared that no tax can be levied on territory added by the act of the Legislature without first submitting the question of such tax to a vote of the people.

We think the judgment of the trial court should be reversed and the injunction restraining the district and its officers dissolved, and this court will now here direct that such judgment be entered.

The judgment is reversed and rendered.

## On Motion for Rehearing.

We believe our interpretation of the act as set out in the opinion is correct. On the question of de facto corporation we desire to say it is not contended that the special act is unconstitutional or that under the act the Legislature could not add the territory. The only question presented, as we conceive the matter, is that the existing corporation was wrongfully assuming jurisdiction over the territory, in that a vote of the electors of the district was not taken as required by the act. This means, as we understand, that the territory was added in an irregular manner, such as would not, under the letter of the statute, be authorized. There was a right to incorporate the territory under the law, but it was asserted there was a failure to comply with some of the requirements thereof. There can be but little question that the electors and inhabitants of the district elected officers therein, voted bonds against the territory, levied taxes, etc., performing the functions of a corporation in the territory. The vote or consent of the electors may not have been ascertained in the manner provided in the original act, yet certainly all the residents therein, including appellee, treated the territory as a part of the school district, and under appellee's contention the electors of that district could extend the corporation so as to include the territory in question. They may not have followed the letter of the law in assuming the power, but have elected to constitute the territory part of the corporation under a power conferred upon them

by the law. The territory or people therein have associated themselves for school purposes under the law, and actually existed as a corporation for all practical purposes, but because of a failure to comply with some provision of the law have no legal right to corporate existence as against a direct attack by the state. But appellee cannot, in an independent suit, call the corporate existence in question. It is our view the existence of the school district could only be attacked by the state upon an information in the nature of a quo warranto, article 6398, R. C. S. If a corporation be acting under color of law and recognized by the state as such, the courts will not permit its corporate existence to be questioned in collateral proceedings. Brennan v. City of Weatherford, 53 Tex. 330, 37 Am. Rep. 758. It has been said:

"Three things are necessary to create the liability: A law or charter under which an organization de jure might be effected; an attempt to organize which falls so far short of the requirements of the law or charter as to be ineffectual, an assumption and exercise of corporate powers notwithstanding the failure to comply with the law or charter." Re Gibbs Est., 157 Pa. 59, 27 Atl. 383, 22 L. R. A. 276.

We think the facts in this case bring it within the requisites above set out. Even though the consent of the residents in the district was obtained in an irregular manner, it was obtained and acted upon by all therein situated for eight years. The corporation, we believe, comes within the definition of de facto.

The motion will be overruled.