

# The Attorney General of Texas

November 4, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable James S. McGrath
Criminal District Attorney
Jefferson County Courthouse
Beaumont, Texas 77704

Opinion No. MW-383

Re: Interpretation of
legislation creating Jefferson
County Drainage District No. 7

Dear Mr. McGrath:

You ask three questions regarding the provisions for choosing directors of the Jefferson County Drainage District No. 7.

In 1962, the Texas Legislature created the Jefferson County Drainage District No. 7, a special district established pursuant to article XVI, section 59 of the Texas Constitution. Acts 1962, 57th Leg., ch. 34, at 98. Section 4 of the act provided that the commissioners of the district be appointed by the Jefferson County Commissioners Court with no more than one commissioner appointed from any one municipality so long as five municipalities existed within the district. At the district's inception, then, the only method of selecting district commissioners was by appointment by the county commissioners court. However, section 4 was amended in 1977 to permit the election of the district's commissioners. The 1977 amendment provides, in pertinent part, as follows:

> ...[T]he provisions of Sections 56.061 through 56.063, Water Code...shall apply to the Commissioners of the District. Section 56.064, Water Code, as amended, shall apply to this District, <u>except that the Commissioners Court shall order the election on petition of at least 20 percent of the real property taxpayers of the district,</u> and that five Commissioners shall be elected at large if an election is ordered under that section.... (Emphasis added).

Acts 1977, 65th Leg., ch. 614, §1, at 1520. Section 56.061 of the Water Code provides that the commissioners (or "directors") of the district be appointed by the county commissioners court. Section 56.064 of the Water Code declares that "[o]n petition of a <u>majority</u> of the real property taxpayers of a district requesting an election of district directors, the commissioners court shall immediately order an election...." (Emphasis added).

You request our opinion concerning the proper interpretation of the 1977 amendment. First, you ask whether the 1977 amendment, which authorizes 20 percent of the real property taxpayers of the district to require the election of district directors, constitutes an improper delegation of legislative authority to private citizens both to make and to suspend the law in violation of the Texas Constitution. We hold that the amendment does neither.

Article I, section 28 of the Texas Constitution provides that "[n]o power of suspending laws in this State shall be exercised except by the Legislature." Article III, section 1 of the Texas Constitution declares that "[t]he Legislative power of this State shall be vested in a Senate and House of Representatives...." It has been suggested that the 1977 amendment, by empowering 20 percent of the real property taxpayers of the district to determine the method of governance of the drainage district, authorizes them to suspend the special law provision on appointment of the district's directors and thereby authorizes an unconstitutional delegation of legislative authority to a group of private citizens.

Early on, the Texas Supreme Court recognized the distinction between a delegation of legislative power to make a law and the discretionary exercise of a power conferred by a law. In State v. Swisher, 17 Tex. 441 (1856), the supreme court struck down as being an unconstitutional delegation of legislative authority a statute which empowered the voters of each county to determine by election whether a certain prohibition on the sale of liquor would be effective in their respective counties. In City of San Antonio v. Jones, 28 Tex. 19 (1866), the supreme court upheld a statute which authorized a municipality, after an affirmative vote of its citizens, to subscribe to stock in a railroad company. The court reaffirmed State v. Swisher, supra, but distinguished it in the following passage:

> The legislature may grant authority as well as give commands, and acts done under its authority are as valid as if done in obedience to its commands. Nor is a statute, whose complete execution and application to the subject matter is, by its provisions, made to depend on the assent of some other body, a delegation of legislative power. The discretion goes to the exercise of the power conferred by the law, but not to make the law itself.

> The law, in such cases, may depend for its practical efficiency on the act of some other body or individual; still, it is not derived from such act, but from the legislative authority. Legislation of this character is of familiar use, and occurs whenever rights or privileges are conferred upon individuals or bodies, which may be

exercised or not in their discretion. And if it may be left to the judgment of individuals or private corporations whether they will avail themselves of privileges conferred by the legislature, there is certainly no valid reason why the same may not be done with citizens of a town or district, who, as a class, are to be affected by the proposed act. (Emphasis added).

28 Tex. at 32-33.

Thus, the Texas Court of Criminal Appeals and the Texas Supreme Court struck down as being an unconstitutional delegation of legislative authority a statute which authorized voters in each county to decide whether pool halls should be prohibited in their respective counties. Lyle v. State, 193 S.W. 680 (Tex. Crim. App. 1917); Ex parte Mitchell, 177 S.W. 953 (Tex. 1915). Cf. Brown Cracker & Candy Co. v. City of Dallas, 137 S.W. 342 (Tex. 1911) (city ordinance regulating prostitution); Ex parte Farnsworth, 135 S.W. 535 (Tex. Crim. App. 1911) (city ordinance governing rate-setting procedures).

At the same time, Texas courts have recognized that statutes which confer powers to particular political subdivisions only upon an affirmative vote of those persons affected thereby are not impermissible exercises of legislative authority. A statute which authorized municipalities to take control of their schools upon an affirmative vote of the citizens therein was upheld in Werner v. City of Galveston, 7 S.W. 726 (Tex. 1888), rehearing denied, 12 S.W. 159 (Tex. 1888). The statute was challenged as an unconstitutional delegation of legislative authority to the voters of the respective municipalities. The supreme court declared:

It is a well-settled principle that the legislature cannot delegate its authority to make laws by submitting the question of their enactment to a popular vote; and in State v. Swisher, 17 Tex. 441, this court held an act of the legislature which authorized the counties of the state to determine by popular vote whether liquor should be sold in their respective limits to be unconstitutional. But it does not follow from this that the legislature has no authority to confer a power upon a municipal corporation, and to authorize its acceptance or rejection by the municipality according to the will of its voters as expressed at the ballot box. (Emphasis added).

7 S.W. at 727.

In Riley v. Town of Trenton, 184 S.W. 344 (Tex. Civ. App. - Texarkana 1916, writ ref'd), the court approved a statute which provided that the benefits of then chapter 11 of title 22 of the

Revised Civil Statutes relating to cities and towns applied to any city when either the governing body submitted the question to the voters or one hundred qualified voters petitioned for an election and the majority of votes were cast therefor.  The court declared:

> In voting to adopt certain statutory provisions, the voters do not in reality adopt the law; they merely bring about a situation to which the law by its terms has been made applicable.  The law is the finished product of the Legislature, and it only awaits the existence of the conditions to which by its terms it is made applicable in order to be enforced.

184 S.W. at 346.  See also Trimmier v. Carlton, 296 S.W. 1070 (Tex. 1927); Spears v. City of San Antonio, 223 S.W. 166 (Tex. 1920); Graham v. City of Greenville, 2 S.W. 742 (Tex. 1886).

Admittedly, a petition is ordinarily used only to call an election to determine whether a proposition will effect some change, rather than to effect the change itself.  Such a procedure, though, has received the imprimatur of the Texas Supreme Court.  In Graham v. City of Greenville, supra, the supreme court held effective an annexation accomplished by means of a petition, in spite of the fact that the statute under which the annexation was authorized provided that "[w]henever a majority of the inhabitants qualified to vote...shall vote in favor of [annexation]."  2 S.W. at 743. (Emphasis added).  The signing of the paper was the only mode of election resorted to for determining the question of annexation. Apparently, some of those who signed were under the impression that the purpose of the petition was merely to call an election to determine the question of annexation, not to effect it.  The court, in declaring that the statute did not provide the usual prerequisites for an election, such as an order and notice therefor and a specification of the time, place, and manner it was to be held, stated:

> The legislature, having power to provide by general law for the extension of the corporate limits of cities of 10,000 inhabitants or less, with the assent of a majority of the residents of the territory proposed to be annexed, has certainly the right to prescribe the manner in which their wishes shall be ascertained.  The constitution says that in all elections by the people the vote shall be taken by ballot, but does not provide that the will of a limited number of people upon any subject in which they may be interested shall be ascertained in no other way except by a public election.  We are pointed to no clause in that instrument which, either directly or by implication, compels the legislature, in case it proposes to ascertain whether the people

> living near a city wish to be annexed to it, to submit that question to them at a public election. With the unlimited power over municipal corporations possessed by the legislature, it may provide for an extension of their limits upon petition of a majority of persons residing within the territory proposed to be annexed, or upon their request ascertained in any other manner, as well as by votes given at a public election.

2 S.W. at 743.

Nor does the fact that the 1977 amendment authorizes a minority of real property taxpayers in the district to require the election of directors render the amendment unconstitutional. You argue that the legislature is without power to authorize a minority of real property taxpayers to change the method of selection from one of appointment to one of election. We have found no authority in support of this claim; Washington ex rel. Seattle Title Trust Company v. Roberge, 278 U.S. 116 (1928) and progeny cited in your brief are inapposite. Such cases are concerned with zoning ordinances and turn on property rights under the fifth and fourteenth amendments to the U.S. Constitution.

The legislature is clearly empowered to determine that the requisite number of signatures on a petition to call an election be less than a majority. In discussing the number of petitioners necessary to call a local option election, the Texas Supreme Court stated as follows:

> According to the varying views of legislative bodies, these numbers are sometimes few and sometimes many....The number ought to be sufficient to give some assurance that there exists a desire on part of a large proportion of the voters for the change to be voted for, and that there is a probability that, in case the election be ordered, the proposition will carry.

Scarborough v. Eubank, 53 S.W. 573, 574 (Tex. 1899). For example, the legislature has provided that a petition signed by 20 or a majority of the legally qualified voters of each affected school district may effect a consolidation election. Educ. Code §§19.232-19.234. See also V.T.C.S. arts. 966 (a petition signed by at least 50 electors required for incorporation of cities and towns of certain population), 990 (a petition signed by at least 26 taxpaying voters necessary for special election for filing vacancy in municipal offices of any incorporated city or town), 1086 (a petition signed by at least two-thirds of the property owners affected thereby necessary to effect powers of towns, cities, and villages with respect to street improvements), 6716-1 (a petition signed by a number equal to at least 10% of the qualified voters of county who voted for governor at the last general election necessary for adoption of Optional County Road

Law of 1947), 7048a (a petition signed by at least 10% of the qualified property taxpaying voters necessary for levy for farm to market and lateral roads); Alco. Bev. Code §251.11 (a petition signed by a number equal to at least 35% of the qualified voters of county who voted for governor at the last general election necessary for local option liquor election).

Moreover, state governments have great flexibility in determining whether "nonlegislative" offices be appointed or elected. See Sailors v. Board of Education, 387 U.S. 105 (1967); Fortson v. Morris, 385 U.S. 231 (1966). This office has already declared that the duties of the commissioners of Jefferson County Drainage District No. 7 fall within the ambit of the U. S. Supreme Court's description of a "nonlegislative" local governing body. Attorney General Opinion H-855 (1976). While it is true that a minority of the real property taxpayers is empowered, by signing a petition therefor, to compel the county commissioners court to call an election of drainage district commissioners, the candidates receiving the greatest number of votes of those cast will still take office. Moreover, it is important to realize that the minority of real property taxpayers are not empowered to appoint or elect the commissioners, but are empowered only to determine that the commissioners be elected.

Admittedly, a statute which provides that a petition is sufficient to effect a change or determine a question rather than merely to determine whether a proposition will effect a change is unusual. Article I, section 2 of the Texas Constitution, which finds political power inherent in the people, has been read to require a majority to exercise that power. See Ramsey v. Dunlop, 205 S.W.2d 979 (Tex. 1947). However, the will of the majority is not undermined by a statutory procedure for increasing popular control over the choice of public offices. With respect to a delegation of legislative authority, the courts have held that a law must be perfect, final and decisive in all of its parts, and the discretion that is given must relate only to its execution. McCombs v. Dallas County, 136 S.W.2d 975, 979 (Tex. Civ. App. - Dallas), writ ref'd, 140 S.W.2d 1109 (Tex. 1940). In the instant statute, a minority of real property taxpayers is without authority to make a law or to appoint public officers, but is authorized only to compel that an election be held for the purpose of selecting those public officers. The statute is "final" and the discretion conferred does relate only to its execution.

We believe, therefore, that the 1977 amendment does not effect either an unconstitutional delegation of legislative authority nor a suspension of laws in contravention of the Texas Constitution, that the amendment is most accurately characterized as a law which is made effective as to a political subdivision only after action taken by the people affected thereby, that it merely authorizes the people to establish "instrumentalities or agencies upon which the law can operate" and relates to "matters of administration and municipal control," Ex parte Francis, 165 S.W. 147, 171 (Tex. Crim. App. 1914)(dissent), that it concerns a matter of "local regulation" for

which the people may fairly be supposed to be "more competent to judge of their needs than a central authority." Johnson v. Martin, 12 S.W.321, 323 (Tex. 1889).

Second, you ask whether the 1977 amendment to the special legislation creating the district should be construed to mean that the election be conducted at large or by place with each place reserved to a municipality within the district. Section 1 of the amendment amending section 4 of the original act creating the district sets forth the following:

> ...five Commissioners shall be elected at large if an election is ordered under that section [i.e., Water Code §56.064]....After the expiration of the terms of the present Commissioners, no more than one Commissioner shall be appointed and/or elected from any one municipality as long as five municipalities exist within the district. (Emphasis added).

1977 Acts, 65th Leg., ch. 614, §1, at 1520. It appears from your brief that five municipalities do in fact presently exist within the district. You suggest that the two provisions are hopelessly in conflict.

It is a cardinal rule of statutory construction that, when new provisions are introduced into a statute by amendment the amended act and all its sections, new and old, must be construed as a harmonious whole, all sections mutually acting upon each other. Shipley v. Floydada Independent School District, 250 S.W. 159, 160 (Tex. Comm'n. App. 1923). An amendment must be interpreted in such a way as to give it effect, Independent Life Insurance Company v. Work, 77 S.W.2d 1036 (Tex. 1934), rather than render it useless. Stolte v. Karren, 191 S.W. 600, 606 (Tex. Civ. App. - San Antonio 1916, writ ref'd). The provision contained in the act originally creating the district stipulated that no more than one commissioner shall be appointed from any one municipality as long as five municipalities exist within the district. The 1977 amendment set forth that the election, if held, be at large. That the legislature intended the provisions to be construed together and considered as a whole is clear; the provision of the original act which set forth that no more than one commissioner be appointed from any one municipality was amended to be "appointed and/or elected" at the same time that the provision for election was included.

It is also a rule of statutory construction that the ordinary signification be applied to words, except words of art or words connected with a particular subject matter. V.T.C.S. art. 10. The phrase "at large" has been defined as "[n]ot limited to any particular place, district, person, matter, or question." Black's Law Dictionary 114 (5th ed. 1979). The only reasonable interpretation which would give effect to both provisions is one which provides that the election

be at large, i.e., that candidates run without regard to place, but that the top five vote-getters, no two of which are from the same municipality, would take office. In other words, if the two top vote-getters were both from Municipality A with the next four top voter-getters each from one other municipality within the district, then the second highest vote-getter from Municipality A would not take office. The first and third through sixth top vote-getters would take office. We concede that such interpretation could have the practical effect of creating places for each commissioner with a place reserved for each of the five municipalities within the district. It is reasonable to conclude that the legislature, in adopting such a proviso, intended that the smaller municipalities be adequately represented.

You suggest in your brief that, if both provisions of the amendment are given effect, the principle of "one man--one vote" may be violated. You indicate that the provision permitting no more than one commissioner to be elected from each municipality within the district would effectively create districts within the drainage district to which the "one man--one vote" principle would apply. While this proviso may have the practical effect of creating places, it would not, however, create districts within the drainage district. All of the qualified voters within the district are still entitled to vote for all of the offices; voters in, say, Municipality A will vote not just for a candidate from Municipality A, but rather they will vote for five candidates for the five offices. And, as stated earlier, the top five vote-getters with no two of which from the same municipality will take office.

And finally, you ask, if the 1977 amendment does not violate constitutional principles and an election were held, would the electorate be restricted to "property-owning taxpayers" of the district. We conclude that it would not.

The 1977 amendment provides that section 56.064 of the Water Code shall apply to this district, except that, upon the presentation of a petition of only 20 percent of the "real property taxpayers," the county commissioners court shall order an election of district commissioners. Neither the special legislation creating the district nor the Water Code itself requires that the electorate be restricted to "real property taxpayers." Rather, the class of persons who are authorized to sign a petition the presentation of which would require the county commissioners court to order an election is so restricted. With respect to the electorate, section 56.064(a) of the Water Code declares that "[t]he election shall be held as other elections under this chapter." Section 56.029 of the Water Code, setting forth the conduct of the elections, does not indicate what qualifications will be imposed upon voters; however, Water Code section 50.002, which applies to general law districts in the Water Code including drainage districts, does.

> The qualifications of voters in district elections are as specified in the state and federal constitutions....

Article VI, section 2 of the Texas Constitution provides that every person who is not subject to the disqualifications set forth in section 1 of article VI of the constitution, is at least twenty-one years old, is a citizen of the United States, and has lived in Texas one year next preceding an election and the last six months within the district or county in which the person seeks to vote be deemed a qualified elector. The section further provides for annual registration requirements which are not to be considered a qualification of an elector. See also Elec. Code §§5.02, 5.05c. The twenty-sixth amendment to the United States Constitution has the effect of lowering the minimum age of those persons who are qualified electors in state and federal elections to eighteen.

With respect to the provision restricting the class of persons who are authorized to sign a petition to "real property taxpayers" neither the United States Supreme Court nor the Texas Supreme Court has addressed the issue whether the restrictions imposed on those persons is constitutionally permissible. We note, however, that the United States Supreme Court has expressly approved a state voting scheme employed in the election of directors of a special limited-purpose district, a water reclamation district, whereby voting eligibility was limited to landowners and votes apportioned according to the amount of land each voter owned. Ball v. James, 49 U.S.L.W. 4459 (1981). See also Salyer Land Co. v. Tulare Lake Basin Water Storage District, 410 U.S. 719 (1973) [hereinafter referred to as Salyer]; Associated Enterprises, Inc. v. Toltec Watershed Improvement District, 410 U.S. 743 (1973) (per curiam).

It is suggested that the phrase "real property taxpayer" is unconstitutionally vague in that it fails to precisely delimit the class of persons eligible to sign the petition. Specifically, it is suggested that it is unclear whether nonresidents or corporations are permitted to sign the petition, though they would clearly not be enfranchised to vote in the commissioners' election. In Salyer, the court explicitly approved a voting scheme facially limited to "landowners" which effectively enfranchised both nonresidents and corporations. "The franchise is extended to landowners, whether they reside in the district or out of it, and indeed whether or not they are natural persons who would be entitled to vote in a more traditional political election." 410 U.S. at 730. Relying on Salyer, we conclude that a court would probably find permissible the qualifications for petitioners set forth in section 56.064 of the Water Code.

## S U M M A R Y

> The 1977 amendment to the special legislation creating the Jefferson County Drainage District

No. 7 neither constitutes an impermissible delegation of legislative authority nor effects a suspension of law. The provisions of the amendment detailing the election procedures should be interpreted together, giving effect to both. The class of persons qualified to vote in the election of district commissioners is not restricted to "real property taxpayers."

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jim Moellinger