**SHIPLEY v. FLOYDADA INDEPENDENT SCHOOL DIST. (No. 414–3792.)**

(Commission of Appeals of Texas, Section A. April 18, 1923.)

**1. Statutes ☞260—New provisions of amended act affecting only one section in force from passage.**

Where an act is amended as to but one section, the original provisions appearing in the amended act are to be regarded as having been the law since they were first enacted, and as still speaking from that time, while the new provisions are to be construed as enacted at the time the amendment took effect.

**2. Statutes ☞230—Amended sections construed with other sections.**

When new provisions are introduced into a statute by amendment, the amended act and all its sections, new and old, must be construed as a harmonious whole.

**3. Statutes ☞185—Intent shown should not be defeated by implication of another intent.**

When the legislative intent can be gathered by a reasonable interpretation of the language, it is not permissible to resort to implication to arrive at some other intent.

**4. Statutes ☞181(2)—Construction involving confusion not adopted unless plaintiff required.**

A construction which will probably result in confusion or conflict should not be adopted unless necessary from the plain language of the act.

**5. Schools and school districts ☞38—Amendatory statute construed to add new territory without vote as required by old law.**

Sp. Laws 1913, c. 44, amending Gen. Laws 1905, c. 137, authorizing the incorporation of an independent school district, construed, and held to evidence the legislative intent to add the additional territory described without requiring a vote of the people of the district as required in the formation of the district.

**6. Statutes ☞138(1)—Amending clause construed by reference to title.**

The court may look to the title of an amending act to aid the description of the amending clause in the body of the act.

**7. Statutes ☞138(1)—Amending act relating to school district not void for failure of amending clause to sufficiently describe amended act or section thereof where title sufficiently identifies it.**

Sp. Laws 1913, c. 44, amending Gen. Laws 1905, c. 137, authorizing the incorporation of an independent school district, held not void because the amending clause in the body of the act, stating "that said section 2 be so amended," does not properly identify or describe the act or section intended to be amended; the title of the amendatory act sufficiently disclosing the identity of the amended act and section.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by W. A. Shipley against Floydada Independent School District, to recover taxes paid, and to restrain the collection of taxes levied. From a judgment of the Court of Civil Appeals (238 S. W. 1026) reversing judgment for plaintiff, and rendering judgment for the School District, plaintiff brings error. Affirmed.

Williams & Martin, of Plainview, for plaintiff in error.

Jeff D. Ayres and E. C. Nelson, Jr., both of Floydada, for defendant in error.

GERMAN, J. On April 17, 1905, the Legislature of the state of Texas passed an act which permitted the town of Floydada, in Floyd county, Tex., and certain adjacent territory therein defined, to incorporate into an independent school district for free school purposes only. The act provides the method by which the voters of the district may put it into effect. Section 2 of that act defines the territory created into said district. Gen. Laws. 1905, p. 332. In pursuance of said act an election was held, which resulted in the district being incorporated; trustees were elected, a maintenance tax was levied and

collected, and in 1906 and 1910 certain bonds were issued.

March 15, 1913, the Legislature passed another act relating to this district, the title to which and the parts necessary to be considered here being as follows:

"An act to amend section 2, of a special act, entitled 'An act to authorize and permit the territory situated within the bounds of the town of Floydada in the county of Floyd and state of Texas; and other land and territory adjacent thereto, to incorporate as an independent school district for free school purposes only, to be known as the Floydada independent school district, with all the powers, rights, and duties of independent school districts formed by incorporations of towns and villages for free school purposes only,' enacted by the Twenty-Ninth Legislature of the state of Texas, approved on the 17th day of April, 1905, so as to include in the district thus formed additional territory, and declaring an emergency.

"Be it enacted by the Legislature of the state of Texas:

"Section 1. That said section 2 be so amended as to hereafter read as follows:

"Section 2. The territory created into said independent school district is hereby described and bounded as follows."

Then follows description of the district, which includes the territory theretofore incorporated and additional territory. Section 2 of the amendatory act is the emergency clause. Special Laws 1913, p. 142. After the amendment of 1913 no election was held to determine whether said enlarged territory would incorporate as the Floydada independent school district, but, according to the findings of fact by the trial court, all parties have acted under the belief that said independent school district embraced the additional territory, without the necessity of a vote to determine that issue; taxes have been levied and collected for maintenance purposes within said additional territory, and the district has been regarded as having been enlarged by operation of law as defined in the act of 1913. In 1921 an election was held within said enlarged district and $90,000 bonds were voted for building purposes. In the same year another election was held, and a maintenance tax of $1 was voted.

Plaintiff in error, W. A. Shipley, who owns lands within the added territory, but which are not within the original territory of the district, brought this suit against the trustees and tax collector of the district, to recover taxes paid by him for certain years, and to enjoin the collection of taxes levied and assessed against property situated within the added territory. His contention is that the act of 1913 did not by its own force enlarge the boundaries of the Floydada school district, but that it was the intention of the Legislature to merely submit to the voters the privilege of incorporating the district with the new boundaries, by an election for that purpose; and, no election having been held, the district had in fact never been enlarged, but remained as originally created, and therefore the acts of the trustees in levying and assessing taxes, and exercising authority over the added territory, were void. The defendants in error insist that by the amendment of 1913 the Legislature enlarged the district by including in the boundaries new territory, and that no election was necessary.

The trial court rendered judgment against the trustees, holding that it was necessary for the electors in the added territory to vote upon the question of enlarging said district, and granted an injunction restraining the collection of taxes against the lands of Shipley situated in the added territory. The Court of Civil Appeals for the Seventh District reversed and rendered the case. 238 S. W. 1026. We have concluded that the Court of Civil Appeals was correct in its holding upon the proposition that the additional territory was added to and became a part of the district by reason of the amendment of 1913, without the necessity of a vote of the electors in the new territory. In view of the able opinion of Chief Justice Huff, we do not find it necessary to go into a lengthy discussion of this proposition.

To arrive at the intention of the Legislature in enacting the amendment of 1913, we must look primarily to the act itself. To understand the legal effect of such amendment it must be considered in connection with the original act and what had been done thereunder.

[1, 2] The purpose of this amendatory act is clearly stated in the title, it being solely to amend section 2 of the former act, and it is in no sense a re-enactment of the entire law. No part of the old law is reproduced or rewritten except section 2. There is a wide difference where a law is only amended in one or more of its sections and where the entire statute is re-enacted, although there may be only one change made in the wording thereof. Where there is merely an amendment of a section of an act, the rule is that the "original provisions appearing in the amended act are to be regarded as having been the law since they were first enacted, and as still speaking from that time; while the new provisions are to be construed as enacted at the time the amendment took effect." 36 Cyc. 1165. When a new section has been introduced into a law, it must be construed in view of the original statute as it stands after the amendment is introduced, and it and all the sections of the old law must be regarded as a harmonious whole, all sections mutually acting upon each other.

There is also a difference in the effect of an amendment to a statute which is a continuing one, which creates or affects rights at all times, and may be brought into operation at any time, and an amendment to an

(250 S. W.)

.act which has already been put into operation, or has performed its functions, as in this instance, but which remains as evidence of the creation of a certain condition or certain rights.

[3] To uphold the contention of plaintiff in error it is necessary to hold that the amendatory act of 1913 had the effect of re-enacting and calling into operation all of the provisions of the act of 1905, or at least those parts which provided for submitting the question of incorporation to a vote of the electors, and providing the method of calling the election, etc. However, there is no more reason for holding that this part of the law was re-enacted than for holding that all of its provisions were re-enacted. To thus hold would be reading into the act something that is not even mentioned therein, and this construction would be in conflict with the rule we have announced above. When an interpretation can be given a statute which reasonably reflects the legislative intent, it is not permissible to resort to implication to arrive at some other intention. If the Legislature had intended for another election to be held on the question of incorporating the enlarged district, it is reasonable to assume that such intention would have been expressed in some manner, and not have been left entirely to implication. Having the power to create the new district without referring the matter to the voters, such a proceeding would have been, to some extent, at least, needless, and we think it should not be held that this was the purpose, unless such intent was clear and manifest from the language of the amendment. The district having been created already, and possessing all the powers incident to its purposes, which had been exercised for eight years, there was no necessity for creating a new agency, but the only thing necessary was to enlarge the boundaries within which the agency already created was to exercise its powers. The Legislature had the right to determine the necessity for extending the limits of the district; and it is apparent it saw this necessity, and intended to meet it by adding new territory to the agency already brought into existence by the electors under the authority granted them by the Legislature. The language in the title of the amendatory act makes this certain. The purpose of the amendment is declared to be to "include in the district thus formed additional territory." The words "thus formed" refer to the prior creation of the district by the electors under the original law. This is further manifest, as pointed out by Chief Justice Huff, in the use of the language, "The territory created into said independent school district is hereby described and bounded as follows."

[4] To give to the amendment this interpretation is to harmonize it with all the other sections of the law. The other sections, having performed their purpose, were, in a

250 S.W.—11

sense, dormant, and only remained as evidence of what had been done, and how it had been done. In this sense they are still "regarded as having been the law since they were enacted, and as still speaking from that time." To say that by substituting the one section amended by the act of 1913 this re-enacted, revived, and brought again into operation all sections of the old act is to make the new section control and influence the whole law, when clearly no such intention ever existed. To so hold would lead to some confusing results. The old law contains numerous dates and references to other laws and provisions of law appropriate as of that date. If all the sections of this old act were revived and brought into operation again, it would be necessary to substitute, by implication, dates and references appropriate to conditions existing in 1913. Where confusion or conflict will probably result from a given construction of a statute, such construction should not be adopted, unless it is the necessary consequence of the plain language of the act.

[5] We think it clear that the Legislature intended to add additional territory to the district as it already existed, without the necessity of submitting the issue to the electors; and this interpretation of the amendment is in perfect harmony with what the Legislature had the power and right to do, considered in connection with what had already been done.

[6, 7] Plaintiff in error has raised the further question that the amendatory act is void, because the body of the act does not properly identify or describe the act or section thereof intended to be amended. The language in the body of the act is this: "That said section 2 be so amended." We are authorized to look to the title of the act to aid this description, and it clearly identifies the act to be amended. This identical question was passed upon by the Supreme Court of Oregon in the case of State v. Robinson, 32 Or. 46, 48 Pac. 358, and we adopt the following language from that opinion as applicable here:

"The argument seems to be that a failure to declare in the body of a legislative act that it is amendatory of an existing statute necessarily renders it inoperative as such, but our attention has not been called to any decision or constitutional provision to that effect. It is quite true that ordinarily an amendatory act shows in the body its character, by declaring that a designated act or section of an existing statute is to be amended; but an error or omission in this respect is immaterial where it is otherwise apparent that it was so intended, and it can be ascertained definitely what section the Legislature intended to amend. And for this purpose resort may be had to the title, where, from the body of the act, the intent of the Legislature is doubtful or obscure. By the Constitution of this state, every act is required to

have a title expressing the subject-matter. The title, herefore, is necessarily a part of the act, and renders very important aid, if need be, in its construction, or in determining the legislative intent."

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.